UNITED STATES of America ex rel. Edilberto CHAPARRO, Joseph F. Cole, Andrew C. Pulley, Eugene J. Rudder, Curtis E. Mays, Delmar Thomas, Dominick Duddle, Thomas Woodfin, Petitioners,

v.

Stanley E. RESOR, Secretary of the Army, Brigadier General James B. Hollingsworth, Commanding General of Fort Jackson, South Carolina, Respondents.

Civ. A. No. 69–350.

United States District Court
D. South Carolina,
Columbia Division.

April 28, 1969.

---

Thomas D. Broadwater, Columbia, S. C., David Rein, Washington, D. C., Michael Smith, Detroit, Mich., Leonard B. Boudin, New York City, Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for petitioners.

Klyde Robinson, U. S. Atty., Wistar D. Stuckey, James H. Fowles, Jr., Asst. U. S. Attys., Columbia, S. C., for respondents.

ORDER

DONALD RUSSELL, District Judge.

The petitioners are legally inducted members of the military forces of the United States, presently involved in court-martial proceedings arising out of conduct committed by them on March 20, 1969, while regularly stationed at Fort Jackson, South Carolina. All were placed in confinement or under restraint at various times between March 21 and March 28, 1969, pending the disposition of such proceedings. Four of the petitioners were confined in the prison stockade [1]; two are under moral restraint within a designated area [2]; one is on restricted status [3]; and one has been released from restriction.[4] All pre-trial confinements and restraints are periodically reviewed and releases are made when, in the opinion of the commanding officer, "developments warrant". Various changes have been made in the conditions of confinement and restraint of certain of the petitioners since their arrest.[5]

Promptly after such confinement or restraint, Article 32(b) investigations—a necessary preliminary to court-martial under the Uniform Code of Military Justice—were authorized as to petitioners Rudder, Pulley, Cole and Thomas and set to begin April 15. At the request of civilian counsel for the petitioners, submitted on April 8, such investigation was continued until April 22 and is now proceeding without delay.[6] Article 32 (b) investigations of Mays, Woodfin and Duddle were withdrawn and their cases are presently being reviewed looking to

---

1. The petitioners confined in the prison stockade are Cole, Pulley, Rudder and Thomas.

2. Petitioners Woodfin and Mays have been so restricted. "Such restriction permits free movement in the company area. This is a moral restraint. There is no guard on the men." See affidavit of Colonel Maertens, April 23, 1969.

3. Petitioner Chaparro, who is to be discharged, is so restricted.

4. Petitioner Duddle has been granted emergency leave.

5. See affidavit of Colonel Maertens, April 23, 1969.

6. See the two affidavits of Colonel Charles R. Counts, Staff Judge Advocate of Headquarters, dated April 23, 1969, and April 24, 1969, together with attachments.

possible trial by Special Courts-Martial or other appropriate action. The petitioner Chaparro is presently being processed for possible discharge.

In the meantime, contending that their pre-trial confinement or restraint violates the provisions of the Uniform Code of Military Justice and the regulations issued thereunder, the petitioners have applied to this Court for a writ of *habeas corpus* to secure their release from confinement or restraint pending the completion of their court-martial proceedings. This is the matter now before me.

It should be noted at the outset that, although the petition sets forth fairly extensive claims of constitutional infirmities in the pending court-martial proceedings, the petitioners at the hearing before this Court, expressly disclaimed any purpose, by this action, to assail the proceedings in court-martial or to seek to by-pass the military procedures applicable thereto. Moreover, they do not assert that their confinement or restraint is under conditions violative of any constitutional rights of persons under restraint,[7] or that it is being extended by "purposeful or oppressive" delay in the orderly processing of the court-martial proceedings.[8]

The sole complaint of the petitioners is that their pre-trial confinement and restraint violate and go beyond the terms of Section 13 of the Uniform Code of Military Justice.[9] The specific ground of petitioners' attack upon the validity of their pre-trial confinement or restraint under the statute turns upon the justification therefor originally given by the petitioners' commanding officer in reply to an inquiry by petitioners'

civilian counsel (Petitioners' Exhibits A and B). The justification then given was "the seriousness of the alleged offense". The Manual for Court-Martial, 1969, duly promulgated under the Military Code,[10] authorizes pre-trial confinement or restraint "to insure the presence of the accused at the trial or because of the seriousness of the offense charged". It is the contention of the petitioners that the words "or because of the seriousness of the offense" go beyond the statutory warrant for such regulation, which limits such right of confinement to the sole ground of need "to insure presence of the accused at trial", and that the action of the commanding officer in basing confinement and restraint on "seriousness of the offense" exceeded his power, rendering the resulting confinement and restraint invalid. It is questionable, to say the least, whether the added language in the regulation, to which the petitioners so strenuously object, is inconsistent with the statutory authorization—certainly, as the Court of Military Appeals, in a decision cited by petitioners' counsel in his letter to the Secretary of the Army, (Petitioners' Exhibit C) interpreted it. Thus, in United States v. Bayhand, 21 CMR 84, the authority cited by petitioners' counsel, the Court stated:

"It must be remembered that the only valid ground for ordering confinement prior to trial is to insure the continued presence of the accused, as where he has earlier indicated that his obligation to remain with his unit weighs lightly with him, or where the seriousness of the offense alleged is likely to tempt him to take leave of his surroundings." (p. 90)

---

7. Cf. Ex parte Hull (1941) 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034, reh. den. 312 U.S. 716, 61 S.Ct. 823, 85 L. Ed. 1146.

8. Cf. Gorko v. Commanding Officer, Second Air Force, Shreveport, La. (C.C.A. 10, 1963) 314 F.2d 858, 860:
"From the inception of the prosecution the proceedings were carried out in conformity with the Uniform Code of Military Justice and without any purposeful or oppressive delay. The time reasonably consumed in the use of the procedures which are designed to protect the rights of the accused and to which no objection is raised forms no basis for a claim of undue delay."

9. 10 U.S.C.A. Section 813.

10. 10 U.S.C.A. Section 836.

■ In my opinion, however, it is unnecessary for this Court to resolve in this proceeding the validity of the pretrial confinement and restraint of the petitioners. Passing over whether the claim of the petitioners, limited as it has been by their counsel, raises such constitutional issue as may support *habeas corpus* jurisdiction [11] but conceding that, under proper circumstances, this Court may review in *habeas corpus* court-martial proceedings for constitutional infirmity [12] and may even grant relief by way of mandamus where the military authorities have violated "their own procedures and regulations" in a court-martial or disciplinary proceedings,[13] its powers for such purposes may only be invoked after the remedies available within what has been described as the "hierarchy within the military establishment",[14] including the Court of Military Appeals, have been exhausted. Any other rule would constitute a needless and untimely "interference with the procedures established to police [military proceedings]".[15]

■ The petitioners seemingly assume that, since they have been denied release by the Secretary of the Army, they have exhausted all remedies within the "hierarchy within the military establishment". This is not true. A plain and clear remedy remains by application in *habeas corpus* to the Court of Military Appeals. As the letter of Colonel Melnick, writing on behalf of the Secretary of Army, in reply to counsel for the petitioners (Petitioners' Exhibit D) pointed out, the Uniform Code of Military Justice and the Manual for Court-Martial, 1969, "provide complete protection remedies and procedures for military persons". The Court of Military Appeals, provided for in the Uniform Code of Military Justice, was expressly created "to enforce the procedural safeguards which Congress determined to guarantee to those in the Nation's armed services". Burns v. Wilson (1952) 346 U.S. 137, 141, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508, reh. den. 346 U.S. 844, 74 S.Ct. 3, 98 L. Ed. 363. Such Court has demonstrated, as the Court indicated in Levy v. Corcoran (1967) 128 U.S.App.D.C. 388, 389 F.2d 929, 930–931, both a readiness to protect, and an effectiveness in protecting, the rights of men in the military service. See, also, Chief Justice Warren, "The Bill of Rights and the Military in the Great Rights" (1963). Under "its general supervisory power over the administration of military justice," it can entertain jurisdiction and grant relief on an extraordinary basis in the nature of *habeas corpus* in order to safeguard accused military personnel in all their legal and constitutional rights, both during and *"pending* court-martial proceedings" (Italics included). United States v. Bevilacqua, 18 USCMA 10, 11–2 (1968). Thus, in Lowe v. Laird, USCMA, filed March 4, 1969, it, on a petition *for a writ of habeas corpus,* reviewed the right of military personnel involved in court-martial proceedings for relief from pre-trial confinement, exactly the question raised by the petitioners.

Petitioners thus have a plain remedy, if their confinement or restraint is invalid, before the Court of Military Appeals. Until such remedy has been exhausted, any application to this Court for relief is untimely.

The petition is accordingly dismissed.

And it is so ordered.

---

11. Cf. United States v. Augenblick (1969) 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537; and Heilman v. United States (C.C.A.7 1969) 406 F.2d 1011, 1013.

12. Gusik v. Schilder (1950) 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146.

13. Smith v. Resor (C.C.A.2 1969) 406 F.2d 141, 145.

14. Burns v. Wilson (1952) 346 U.S. 137, 141, 73 S.Ct. 1045, 97 L.Ed. 1508, reh. den. 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363.

15. Noyd v. Bond (C.C.A.10 1968) 402 F.2d 441, 442.