797 F.2d 1538
 Jaime B. MENDRANO, Petitioner-Appellant,
v.
William French SMITH, Attorney General of the United States,
Casper Weinberger, Secretary of Defense, John O. Marsh,
Secretary of the Army, Colonel O.L. McCotter, Commandant,
U.S. Disciplinary Barracks, U.S. Army Combined Arms Center,
Fort Leavenworth, Kansas, Respondents-Appellees.
 No. 84-1735.
 United States Court of Appeals,
Tenth Circuit.
 July 31, 1986.
 
 Henri J. Watson, Dennis D. Gooden, Kansas City, Mo., and C. Albert Herdoiza, Kansas City, Kan., were on brief for petitioner-appellant.
 Benjamin L. Burgess, Jr., U.S. Atty. and Alleen S. Castellani, Asst. U.S. Atty., Topeka, Kan., were on brief for respondents-appellees.
 Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and WINDER, District Judge.*
 HOLLOWAY, Chief Judge.
 
 
 1
 In this habeas corpus proceeding, petitioner-appellant Jaime B. Mendrano, a discharged army private incarcerated in the United States Disciplinary Barracks at Fort Leavenworth, Kansas, challenges his convictions for premeditated murder and lewd and lascivious conduct with respect to one woman, and rape with respect to another. He asserts that his trial violated his Sixth Amendment right to jury trial and "to a fair and impartial jury," and his Fifth Amendment due process rights because Article 52(a)(2) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. Sec. 852(a)(2), allowed a six-member General Court-Martial to convict him with the possible concurrence of only two-thirds of the voting members. We affirm the district court's denial of his petition for habeas relief.
 
 
 2
 * A
 
 
 3
 The United States Army Court of Military Review in its written opinion related the following facts, apparently as being supported by the Government's evidence or inferences to be drawn from them.
 
 
 4
 Late on the evening of October 4, 1980, or in the early morning hours of October 5 petitioner met Mrs. Sheree Kearney, the wife of a serviceman stationed in West Germany, in Junction City, Kansas. Sometime after midnight, Mrs. Kearney, petitioner, and another soldier took a taxi from Junction City to Camp Funston, located on the premises of Fort Riley, Kansas. Sometime later, petitioner was seen forcibly leading a woman towards the Camp Funston Bowling Alley, located in the general area where Mrs. Kearney's body was later found. Petitioner, on several occasions said "Come on, Baby," to which the woman repeatedly responded that she wanted to go home and that she wanted someone to call a taxi. Petitioner struck Mrs. Kearney on the head with a blunt instrument and strangled her with his hands. He then dragged her body 123 feet and left it at the bottom of a subterranean stairway adjacent to the Camp Funston Theatre. Later he violated Mrs. Kearney's corpse anally and vaginally. The corpse was discovered on the morning of October 6, 1980. United States v. Mendrano, No. CM 440893, Slip op. at 2-3 (A.C.M.R., Mar. 23, 1983).
 
 
 5
 Petitioner was charged with premeditated murder and two counts of lewd and lascivious conduct under UCMJ Articles 118 and 134, 10 U.S.C. Secs. 918 & 934, for Mrs. Kearney's death and the violation of her corpse. In addition, petitioner was charged with the rape of another woman, Specialist Four Karen Turner, in violation of UCMJ Article 120, 10 U.S.C. Sec. 920, although we have no facts concerning the circumstances of this incident. After a five day trial, a six-officer general court-martial convicted petitioner on all counts and sentenced him to a dishonorable discharge, confinement at hard labor for life, and forfeiture of all pay and allowances. Appl. For Writ of Habeas Corpus, p 1; United States v. Mendrano, supra, Slip op. at 1-2.
 
 
 6
 Petitioner Mendrano appealed to the Army Court of Military Review, which affirmed his convictions, United States v. Mendrano, supra, Slip op. at 6, and to the United States Court of Military Appeals, which denied his petition for review. United States v. Mendrano, 17 M.J. 47 (C.M.A.1983). Mendrano then filed his habeas petition in the District Court for the District of Kansas, alleging that his confinement violates his Fifth Amendment right of due process and his Sixth Amendment "right to a fair and impartial jury" because "[t]he court-martial panel which convicted petitioner consisted of six members, and only two-thirds of those members were required to concur in the findings of guilty." Habeas Appl. p 4, I R. 2.[1] The district court rejected petitioner's arguments, relying on our statement in Millwood v. Nix, Unpublished No. 82-1909 (10th Cir., Apr. 29, 1983), that "there is no constitutional right to trial by jury in military court-martial cases." Mendrano v. Smith, Civ. Case No. 84-3071, Slip op. at 1-2 (D. Kan., Mar. 30, 1984), I R. 4-5.
 
 
 7
 Petitioner appeals the district court's denial of his application for a writ of habeas corpus.
 
 B
 
 8
 The general court-martial which convicted petitioner is the highest of three types of courts-martial and it may try persons, such as petitioner, who are subject to the Uniform Code of Military Justice, for "any offense" punishable under the Code. UCMJ Art. 18, 10 U.S.C. Sec. 818. The general court-martial must consist of "a military judge and not less than five members," unless the accused requests in writing a trial by military judge alone. Id., Art. 16(1), 10 U.S.C. Sec. 816(1). Under the statute, the number of panel members on the court may vary from case to case as long as the court-martial panel consists of at least five members. See, e.g., McDaniel v. Hiatt, 78 F.Supp. 573, 574 (M.D. Pa.1948); United States v. Wolff, 5 M.J. 923, 925 (N.C.M.R.1978). The convening authority, usually the defendant's commanding officer, may detail a commissioned officer, who must be a member of a state or federal bar and certified as legally qualified by the appropriate Judge Advocate General, to serve as military judge, UCMJ, Art. 26, 10 U.S.C. Sec. 826, and shall also detail qualified trial counsel and defense counsel. Id., Art. 27, 10 U.S.C. Sec. 827. The military judge presides over the court-martial, rules on evidentiary and other matters, and instructs the court-martial panel members how to apply the law to the case. Id., Arts. 26(a), 51(b), (c), 10 U.S.C. Secs. 826(a), 851(b), (c).
 
 
 9
 Like a common law jury, the panel members serve subject to challenge and weigh the evidence in the trial. Winthrop, Military Law & Precedents 55 (2d ed. 1920). A general court-martial conducts all of its voting by secret written ballot. However, unlike most juries, a general court-martial may convict a defendant of any offense other than one "for which the death penalty is made mandatory by law" with the concurrence of only two-thirds of its voting members, UCMJ, Arts. 51(a), 52(a), 10 U.S.C. Secs. 851(a), 852(a).[2] The "beyond reasonable doubt" standard applies in a general court-martial trial like that of petitioner's. See note 7, infra. Further, with respect to sentencing, the Code provides that no person may be sentenced to suffer death except by the concurrence of all members of the court-martial present when the vote is taken and for an offense expressly made punishable by death. In addition no person may be sentenced to life imprisonment or confinement for more than ten years except with the concurrence of three-fourths of the members present when the vote is taken. UCMJ, Art. 52(b)(1) and (2), 10 U.S.C. Sec. 852(b)(1) and (2).[3] Also, unlike the rule in a jury trial, failure to convict results in acquittal; there are no "hung juries."[4] Nevertheless, the modern military court-martial proceeding bears a considerable resemblance to a civilian jury trial and this similarity lends some credence to petitioner's argument that the same number and unanimity requirements which govern conviction in a civilian criminal trial should also apply to convictions by a court-martial panel.[5]
 
 II
 
 10
 * Military law has evolved a long way since Chief Justice Chase said, nearly 120 years ago, that "the power of Congress, in the government of the land and naval forces and of the militia, is not at all affected by the fifth or any other amendment." Ex parte Milligan, 71 U.S. [4 Wall.] 2, 138, 18 L.Ed. 281 (1866) (concurring opinion). The Supreme Court has since held that members of the military are entitled to at least some of the protections of the Bill of Rights, see Brown v. Glines, 444 U.S. 348, 354, 100 S.Ct. 594, 599, 62 L.Ed.2d 540 (1980) (freedom of speech subject to differing application required for military effectiveness); Burns v. Wilson, 346 U.S. 137, 142-43, 73 S.Ct. 1045, 1048-49, 97 L.Ed. 1508, reh. denied, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953) (basic guarantees of due process), and the Court of Military Appeals, relying on the Court's decision in Burns v. Wilson, has held that constitutional safeguards apply to military trials "except insofar as they are made inapplicable either expressly or by necessary implication." United States v. Tempia, 16 U.S.C.M.A. 629, 634, 37 C.M.R. 249, 254 (1967).
 
 
 11
 Generally, our circuit will limit its review of military habeas petitions to a determination whether the military courts have dealt fully and fairly with properly asserted constitutional claims, but we feel that full review of petitioner's claim here is especially appropriate.[6]
 
 B
 
 12
 In determining the extent to which the Due Process Clause of the Fourteenth Amendment imposes the Sixth Amendment's right to jury trial on the States, the Supreme Court has refused to hold that the Constitution requires conformity to the historic view that a jury must consist of twelve persons and that its verdict must be unanimous. However, the Court has held that due process imposes certain minimum requirements to preserve the jury's reliability as a fact-finder and its role as a representative of the community in which the defendant is being prosecuted. In Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Court stated that, although "the size of the jury at common law came to be fixed generally at 12, that particular feature of the jury system appears to have been a historical accident, unrelated to the great purposes which gave rise to the jury in the first place," id. at 89-90, 90 S.Ct. at 1899-1900 (footnotes omitted), and upheld a state's use of a six-person jury in a criminal case. Important to the Court's holding was the belief that "the reliability of the jury as a fact finder hardly seems likely to be a function of its size." Id. at 100-101, 90 S.Ct. at 1905-06.
 
 
 13
 In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), the Court held that in a felony prosecution, a Louisiana statute requiring less-than-unanimous jury verdicts (9 of 12 jurors to return a guilty or not guilty verdict) did not violate the Due Process Clause by infringement on the reasonable-doubt standard. The Court did allude to the fact that 9 of 12 jurors, a "substantial majority" ... "such a heavy majority," remained convinced of guilt after considering the dissenters' views. Id. at 362, 92 S.Ct. at 1624. In Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the plurality opinion of Justice White held that a verdict with the concurrence of only ten of twelve jurors did not violate any Sixth Amendment requirement and did not infringe the constitutional guarantee, rooted in due process, that guilt in criminal cases be proved beyond a reasonable doubt. The plurality opinion concluded that unanimity of verdict was not essential to preserve the jury's role as a safeguard against official oppression and a repository of common sense, or to insure representation of a fair cross-section of the community. Id. at 410-12, 92 S.Ct. at 1632-34.
 
 
 14
 However, in Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), Justice Blackmun, writing for the plurality, concluded that a unanimous conviction by a five-person jury for a non-petty offense violated an accused's right to jury trial. Relying on empirical studies made since the Court's decision in Williams v. Florida, his opinion stated:
 
 
 15
 [T]hese studies ... lead us to conclude that the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members. We readily admit that we do not pretend to discern a clear line between six members and five. But the assembled data raise substantial doubt about the reliability and appropriate representation of panels smaller than six. Because of the fundamental importance of the jury trial to the American system of criminal justice, any further reduction that promotes inaccurate and possibly biased decision making, that causes untoward differences in verdicts, and that prevents juries from truly representing their communities, attains constitutional significance. 435 U.S. at 239 [, 98 S.Ct. at 1038.]
 
 
 16
 In Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), the most persuasive authority for petitioner, the Court reaffirmed Ballew and stated that "much the same reasons that led us in Ballew to decide that use of a five-member jury threatened the fairness of the proceeding and the proper role of the jury, lead us to conclude now that conviction for a non-petty offense by only five members of a six-person jury presents a similar threat to preservation of the substance of the jury trial guarantee and justifies our requiring verdicts rendered by six-person juries to be unanimous." Id. at 138, 99 S.Ct. at 1627 (footnote omitted). This reasoning rests on the recognition that "the abandonment of the unanimity rule is another way of reducing the size of the jury," but is "far more effective in nullifying the potency of minority view points" in that "[m]inority viewpoints fare better on a jury of ten that must be unanimous than on a jury of twelve where ten members must agree on a verdict." Zeisel, ... And Then There Were None; The Diminution of the Federal Jury, 38 U.Chi.L.Rev. 710, 722 (1971). See also, Davis, et al., The Decision Processes of 6 and 12 Person Mock Jury Assigned Unanimous and Two-Thirds Majority Rules, 32 J. Personality & Soc. Psychol. 1, 12 (1975) (suggesting that juries operating under a rule allowing non-unanimous verdicts give only cursory consideration to minority viewpoints).
 
 
 17
 Thus, although the Court has held that a verdict by a state jury of twelve need not be unanimous, Johnson, 406 U.S. at 363, 92 S.Ct. at 1625; Apodaca, 406 U.S. at 410-12, 92 S.Ct. at 1632-34, a state jury may not consist of fewer than six members, and a six-member jury's verdict must be unanimous. Petitioner relies on such case law for his two-pronged attack on the constitutionality of his conviction under Article 52(a)(2) of the Uniform Code of Military Justice, 10 U.S.C. Sec. 852(a)(2). First, he urges us to reconsider our holding in Millwood v. Nix, supra, that military defendants before courts-martial do not have a right to jury trial, so that Ballew and Burch would directly apply to render his conviction unconstitutional. Second, he contends that his conviction by as few as two-thirds of the members of his six-person court-martial violates his rights under the Due Process Clause of the Fifth Amendment, and that such a non-unanimous verdict also infringes his Sixth Amendment rights by depriving him of a fair trial. Brief for the Appellant 2-3.
 
 C
 
 18
 We decline to reconsider our holding that members of the military forces subject to the jurisdiction of courts-martial are not entitled to a jury trial and therefore to its unanimity requirement. Millwood v. Nix, Slip op. at 4-5; see also King v. Moseley, 430 F.2d at 734. Of course, our panel could not itself overturn the prior precedents of this court and would have to submit the matter to the court en banc. This we are not persuaded to do.
 
 
 19
 Moreover, it is doubtful that we could alter our rule as grounded in the right to jury trial in light of Supreme Court precedent. As the Court stated nearly 120 years ago:
 
 
 20
 The sixth amendment affirms that 'in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury,' language broad enough to embrace all persons and cases; but the fifth, recognizing the necessity of an indictment, or presentment, before anyone can be held to answer for high crimes, 'excepts cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger;' and the framers of the Constitution, doubtless, meant to limit the right of trial by jury, in the sixth amendment, to those persons who were subject to indictment or presentment in the fifth." Ex parte Milligan, 71 U.S. [4 Wall.] 2, 123, 18 L.Ed. 281 (1866) (dictum, emphasis supplied by the court deleted).
 
 
 21
 Subsequent statements by the Court and the courts of appeals reflect the universal view that members of the military have no right to jury trial in court-martial proceedings. See, e.g., O'Callahan v. Parker, 395 U.S. 258, 261, 89 S.Ct. 1683, 1684, 23 L.Ed.2d 291 (1969) (The Fifth Amendment "... exempts 'cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger' ... inferentially, from the right to trial by jury") (dictum, emphasis supplied by the Court deleted); Whelchel v. McDonald, 340 U.S. 122, 127, 71 S.Ct. 146, 149, 95 L.Ed. 141 (1950), ("The right to trial by jury guaranteed by the Sixth Amendment is not applicable to trials by courts-martial or military commissions") (dictum); Ex parte Quirin, 317 U.S. 1, 40, 63 S.Ct. 1, 16, 87 L.Ed. 3 (1942) (" '[C]ases arising in the land or naval forces' ... are expressly excepted from the Fifth Amendment, and are deemed excepted by implication from the Sixth") (dictum); Kahn v. Anderson, 255 U.S. 1, 8, 41 S.Ct. 224, 225, 65 L.Ed. 469 (1921) (rejecting claim that accused could not be tried by a military court which did not provide him a jury trial or indictment by a grand jury). See also Betonie v. Sizemore, 496 F.2d 1001, 1007 (5th Cir. 1974); Branford v. United States, 356 F.2d 876, 877 (7th Cir. 1966); Daigle v. Warner, 490 F.2d 358, 364 (9th Cir.1974) (dictum) (all holding that a member of the military subject to court-martial jurisdiction is not entitled to a jury trial).
 
 
 22
 Since petitioner does not argue that the court-martial which convicted him lacked subject matter jurisdiction, see O'Callahan, 395 U.S. at 272-73, 89 S.Ct. at 1690-91; Relford v. Commandant, 401 U.S. 355, 364-66, 91 S.Ct. 649, 654-56, 28 L.Ed.2d 102 (1971), the Sixth Amendment did not obligate the military to provide him a jury trial. Therefore, the Sixth Amendment jury trial guarantee cannot itself form the basis for imposing on petitioner's court-martial the requirements of Ballew and Burch.
 
 D
 
 23
 The conclusion that the Sixth Amendment jury trial guarantee does not impose the jury trial requirements of Ballew and Burch on petitioner's court-martial panel "shift[s] the frame of reference ... to the Fifth Amendment's prohibition against the deprivation of 'life, liberty, or property, without due process of law.' " Middendorf v. Henry, 425 U.S. 25, 34, 96 S.Ct. 1281, 1287, 47 L.Ed.2d 556 (1976). We therefore turn to petitioner's argument that his trial and conviction by a six-member panel operating under the two-thirds voting rule of Article 52 of the UCMJ violated due process of law. For reasons that follow, after consideration of the fundamental guarantees of the Due Process Clause and the factors governing their application to the military forces as indicated by Supreme Court and other precedents, we conclude that the two-thirds rule of Article 52 satisfies the requirements of due process in this case.
 
 
 24
 When Congress acts in the area of military affairs, as it did with enactment of the two-thirds rule, it remains subject to the limitations of the Due Process Clause, but the limitations to be applied may differ because of the military context. See Rostker v. Goldberg, 453 U.S. 57, 67, 101 S.Ct. 2646, 2653, 69 L.Ed.2d 478 (1981); Middendorf v. Henry, supra, 425 U.S. at 34, 96 S.Ct. at 1287; Burns v. Wilson, 346 U.S. at 142-43, 73 S.Ct. at 1048-49; Curry v. Secretary of the Army, 595 F.2d 873, 876 (D.C.Cir.1979). See also, De War v. Hunter, 170 F.2d 993, 997 (10th Cir.1948), cert. denied, 337 U.S. 908, 69 S.Ct. 1048, 93 L.Ed. 1720, reh. denied, 337 U.S. 934, 69 S.Ct. 1493, 93 L.Ed. 1720 (1949) ("[W]hat constitutes due process in a trial by a military tribunal is gauged by the principles of military law enacted by the Congress, provided the accused is given due notice of the charge against him, a fair opportunity to prepare his defense, and his guilt is adjudicated by a competent tribunal") (footnote omitted). However, whether due process requires imposition on courts-martial of the specific numerical and voting requirements set forth in Ballew and Burch must be decided in the context of the military regime. The scope of such requirements of due process "depends upon an analysis of the interests of the individual and those of the regime to which he is subject." Middendorf v. Henry, supra, 425 U.S. at 43, 96 S.Ct. at 1291; Curry v. Secretary of the Army, 595 F.2d at 876.
 
 
 25
 In weighing petitioner's claim we owe "particular deference" to Congress determination of when "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty," Middendorf v. Henry, 425 U.S. at 43, 96 S.Ct. at 1291, quoting Burns v. Wilson, 346 U.S. at 140, 73 S.Ct. at 1047, and "great deference to the professional judgment of military authorities concerning the relative importance of a particlar military interest." Goldman v. Weinberger, --- U.S. ----, ----, 106 S.Ct. 1310, 1311, 89 L.Ed.2d 478 (1986). Consistent with the Constitution is the historic recognition that the military forces are a specialized society separate from civilian society, and "its unique circumstances and needs justify a departure from civilian legal standards," Curry v. Secretary of the Army, 595 F.2d at 877.
 
 
 26
 The military courts have long held that the constitutional standards of Ballew and Burch do not apply in military trials.[7] These holdings rest, however, not on any articulated "professional judgment of military authorities concerning the relative importance of a particular military interest," Goldman, --- U.S. at ----, 106 S.Ct. at 1311, but on the military courts' perception that the empirical studies upon which the Supreme Court rested its holdings in Burch and Ballew are "inapposite" in the military context. The Army Court of Military Review has stated:
 
 
 27
 It cannot be gainsaid that the military trial must be fair and impartial. [citations] The trial is, however, by a unique, military tribunal that is essentially different from the jury envisioned by the Sixth Amendment. The composition of courts-martial is different, as the members are drawn exclusively from the accused's own profession based on specified qualifications (one of which is judicial temperament), with specialized knowledge of the profession, and subject to only one challenge other than for cause. Their functioning differs, too. For example, it includes the questioning of witnesses and the determining of sentences. In view of such compositional and functional differences, the studies relied upon in Ballew and Burch are inapposite. United States v. Guilford, 8 M.J. 598, 602 (A.C.M.R.1979) (footnote omitted).
 
 
 28
 The empirical studies cited in Ballew and Burch and the other literature we have found on the subject neither confirm nor deny the correctness of this perception.
 
 
 29
 However, we should take account of the circumstances of the military forces in resolving the due process issue. "[T]he fundamental function of the armed forces is 'to fight or be ready to fight wars'," Curry, 595 F.2d at 877, quoting Toth v. Quarles, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955), and the military legal system must be structured with appropriate consideration given to the fact that "[o]bedience, discipline, and centralized leadership and control, including the ability to mobilize forces rapidly, are all essential if the military is to perform effectively." Curry, 595 F.2d at 877. This accommodation of legal procedure to the critical mission to prepare for and win wars and the need to minimize diversions from this task force the military to turn to "other and swifter modes of trial than are furnished by the common law courts ..." Ex Parte Milligan, 71 U.S. [4 Wall.] 2, 123, 18 L.Ed. 281 (1866). The Court has noted that a court-martial panel is "empowered to act by a two-thirds vote" in detailing the characteristics of a court-martial, which "remains to a significant degree a specialized part of the overall mechanism by which military dicipline is preserved." O'Callahan v. Parker, 395 U.S. at 263, 265, 89 S.Ct. at 1685, 1687 (footnote omitted).
 
 
 30
 The court-martial arose because military commanders in the field and aboard ship, often cut off from civilian society, needed a practical mechanism of formalized punishment to discipline their troops. Sherman, The Civilianization of Military Law, 22 Me.L.Rev. 3, 3-4 (1970).[8] The immediate ancestor of the modern American court-martial was authorized by the 1776 Articles of War, which required courts-martial to consist of at least 13 officers. Recognizing that small, isolated detachments might not be able to assemble enough officers for a full 13 member court, Congress reduced the minimum number needed for a full court to its present five. Schlueter, The Court-Martial: An Historical Survey, 87 Mil.L.Rev. 129, 147-48 (1980). Although early articles of war placed no limitation on the number of votes needed for a conviction, under the practice at the time a majority vote was all that was required. Winthrop, supra, note 9, at 377; Larkin Should the Military Less-Than-Unanimous Verdict of Guilt Be Retained?, 22 Hast. L.J. 237, 239 (1971). Congress, in 1920, adopted the two-thirds requirement for the army and later expanded it to the other services in the Uniform Code of Military Justice. Id.
 
 
 31
 The two-thirds rule, as implemented by the Manual For Courts-Martial, lessens the problem of the hung jury with the votes of only two-thirds of the voting panel members being required to convict. Furthermore, there is a significant recompense to the defendant, in that failure of two-thirds to vote for conviction results in acquittal. This balancing does not seem constitutionally impermissible. We are mindful that, in the context of civil jury trials, in Burch the Court rejected a time-saving argument as speculative on that record and, more importantly, because the State there had reduced the jury size to the minimum number of six (the same number as on petitioner's court-martial panel), threatening the constitutional principles that led to the establishment of the size threshold. 441 U.S. at 139, 99 S.Ct. at 1628; cf. Ballew, 435 U.S. at 244, 98 S.Ct. at 1041.[9] Nevertheless, we feel that in the military context the obvious policy preference by Congress for lessening the hung-jury problem in courts-martial should be given deference.[10] "Judicial deference ... is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged." Goldman, --- U.S. at ----, 106 S.Ct. at 1313 (quoting Rostker, 453 U.S. at 70, 101 S.Ct. at 2654).
 
 
 32
 While this appeal presents close and troubling questions, after considering the critical constitutional protections involved, as well as the congressional judgment expressed in the adoption of the two-thirds rule for the military tribunals, the compensating factor of the rule for acquittal where a conviction is not approved, and the lack of any claim or showing of empirical data here that the two-thirds rule impairs the quality of court-martial results so as to amount to a constitutional infringement, we conclude that the balance that has been struck does not violate the Due Process Clause or other constitutional principles relied on by the petitioner.
 
 III
 
 33
 There being no showing of constitutional error as claimed by the petitioner, the judgment is accordingly
 
 
 34
 AFFIRMED.
 
 
 
 *
 The Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 Since, as required by the Uniform Code of Military Justice, the court-martial voted by secret ballot, our record does not reveal the number of votes for conviction. However, we consider the two-thirds rule's validity because it did apply to this trial and assume only two-thirds, or four members of the court-martial voted for conviction
 
 
 [2]
 Since the number of panel members varies from case to case and any fraction which results in computing the number of necessary votes counts as one, see Manual For Courts-Martial, United States, p 74 d (3) (1969) (rev'd. ed.); Manual For Courts-Martial, United States, Disc. foll. R.C.M. 921(c)(2)(B) (1984), the actual percentage of votes required for conviction under the two-thirds rule also varies, from a high of 80 percent (four out of five members) for a five member panel to a low of 66.7 percent for a panel of six (four out of six), nine (six out of nine), twelve (eight out of twelve), or fifteen members (ten out of fifteen). See Smallridge, The Military Jury Selection Reform Movement, 19 Air Force L. Rev. 343, 376 (1978)
 
 
 [3]
 Thus, it is permissible for a court-martial to convict someone with the concurrence of only two-thirds of the voting panel members, while any sentence to a term of imprisonment exceeding ten years must be with the concurrence of three-fourths of the members. McKinney v. Warden, United States Penitentiary, 273 F.2d 643, 644 (10th Cir.1959), cert. denied, 363 U.S. 816, 80 S.Ct. 1253, 4 L.Ed.2d 1156 (1960). See also Stout v. Hancock, 146 F.2d 741, 744 (4th Cir.1944), cert. denied, 325 U.S. 850, 65 S.Ct. 1086, 89 L.Ed. 1971 (1945). Like the percentage required to convict under the two-thirds rule, the actual percentage of votes required for sentencing under the three-fourths rule varies according to the size of the court-martial, from a high of 85.7 percent with a seven member panel (six of seven members), to a low of 75 percent with a panel of eight (six of eight), twelve (nine of twelve), and sixteen (twelve of sixteen). To impose life imprisonment in this case, the three-fourths rule required the votes of five of six, or 83.3 percent of the members of Mendrano's six-member court-martial panel. Smallridge, note 2, supra, 19 Air Force L.Rev. at 377
 
 
 [4]
 The version of the Manual for Courts-Martial in effect at the time of Mendrano's conviction read:
 A finding of not guilty results as to any specification or charge if no other valid finding is reached thereon ...
 Manual For Courts-Martial, United States p 74(d)(3)(1969) (rev'd. ed.).
 The current version states in relevant part:
 If fewer than two-thirds of the members present vote for a finding of guilty ... a finding of not guilty has resulted as to the charge or specification on which the vote was taken.
 R.C.M. 921(c)(3), Manual For Courts-Martial, United States (1984).
 
 
 [5]
 Some commentators have pointed out the analogous role and other similarities between a court martial panel and a criminal jury to support arguments like those petitioner makes here. See, e.g., Cohen, The Two Thirds Verdict: A Surviving Anachronism in an Age of Court-Martial Evolution, 20 Cal. Western L.Rev. 9 (1983); Note, The Military Justice System and the Right to Trial By Jury: Size and Voting Requirements of the General Courts-Martial For Service-Connected Civilian Offenses, 8 Hast.Const.L.Q. 617 (1981); Note, Military Triers of Fact: A Needless Deprivation of Constitutional Protections?, 33 Hast.L.J. 727, 741-50 (1982)
 
 
 [6]
 Generally, "the limited function of the civil courts in reviewing a military conviction on a petition for a writ of habeas corpus, in addition to ... jurisdictional issues ... is to determine whether the military gave fair consideration to each of the petitioner's constitutional claims." King v. Moseley, 430 F.2d 732, 734 (10th Cir.1970). See also, Wolff v. United States, 737 F.2d 877, 879 (10th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 575, 83 L.Ed.2d 514 (1984) (same). Here the record indicates that the military courts gave at least some consideration to petitioner's Fifth and Sixth Amendment claims
 Supreme Court authority precludes us from disturbing the military courts' fully considered findings "simply to reevaluate the evidence." Burns v. Wilson, supra, 346 U.S. at 142, 73 S.Ct. at 1048. Applying our broad interpretation of this rule, this circuit has refused to review military courts' determinations of constitutional issues where the issues were fully and fairly litigated before the military tribunals. See, e.g., Watson v. McCotter, 782 F.2d 143, 145 (10th Cir.1986), cert. denied, --- U.S. ----, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986) (describing what constitutes full and fair consideration by the military courts and declining on these grounds to hear an effectiveness of counsel claim); Kehrli v. Sprinkle, 524 F.2d 328, 331 (10th Cir.1975), cert. denied, 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976) (refusing to review fully considered Fourth Amendment search and seizure issue); King v. Moseley, supra, 430 F.2d at 734-35 (refusing to review fully considered speedy trial issue).
 Nevertheless, our cases establish that we have the power to review constitutional issues in military cases where appropriate, see, e.g., Wallis v. O'Kier, 491 F.2d 1323, 1325 (10th Cir.), cert. denied, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974) (reviewing validity of unsworn search warrant issued by commanding officer); Kennedy v. Commandant, U.S. Disciplinary Barracks, 377 F.2d 339, 342 (10th Cir.1967) (reviewing right to counsel issue), and we will do so here, since the constitutional issues raised are substantial and largely free of factual questions, and since the Government does not argue that full and fair consideration by the military courts makes judicial review inappropriate.
 
 
 [7]
 United States v. Rojas, 15 M.J. 902, 919 (N-M C.M.R.1983), judgment set aside on other grounds and remanded, 17 M.J. 154 (C.M.A.1984); United States v. Seivers, 9 M.J. 612, 615 (A.C.M.R.), aff'd., 9 M.J. 397 (C.M.A. 1980); United States v. Yoakum, 8 M.J. 763, 768 (A.C.M.R.), aff'd., 9 M.J. 417 (C.M.A.1980); United States v. Guilford, 8 M.J. 598, 601-02 (A.C.M.R.1979); United States v. Corl, 6 M.J. 914, 915 (N.C.M.R.), aff'd., 8 M.J. 47 (C.M.A.1979); United States v. Montgomery, 5 M.J. 832, 834 (A.C.M.R.1978); United States v. Wolff, 5 M.J. 923, 925 (N.C.M.R.1978)
 The Uniform Code of Military Justice does provide that the "beyond reasonable doubt" standard applies in a general court-martial trial like that of petitioner's, UCMJ Art. 51(c), 10 U.S.C. Sec. 851(c), and under decisions of the Court of Military Appeals, the standard applies in such proceedings. See United States v. Verdi, 5 M.J. 330, 336-37 (C.M.A.1978) (citing In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
 
 
 [8]
 For various accounts of the history of courts-martial, see, e.g., Aycock & Wurfel, Military Law Under the Uniform Code of Military Justice Ch. 1, at 3-15 (1955); Bishop, Justice Under Fire Ch. 1 (1974); Winthrop, Military Law & Precedents 45-48 (2d ed. 1920); Schlueter, The Court-Martial: An Historical Survey, 87 Mil.L.Rev. 129 (1980); Sherman, The Civilianization of Military Law, 22 Me.L.Rev. 3 (1970). For a discussion of how the unique needs of the military influenced the evolution of military justice, see Bishop, supra, Ch. 2; Moyer, Justice and the Military Secs. 1-100 to 1-150 (1972)
 
 
 [9]
 We are also mindful of the statement in Williams v. Florida, 399 U.S. at 100, 90 S.Ct. at 1905, that the goals of jury trial are not "in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12--particularly if the requirement of unanimity is retained ..." (emphasis added, footnote omitted)
 
 
 [10]
 In Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), the Court stated:
 "[T]rial of soldiers to maintain discipline is merely incidental to an army's primary fighting function. To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served." Id. at 17, 76 S.Ct. at 5.