**UNITED STATES, Appellee,**

v.

**Private E-2 Michael C. WATSON, SSN 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, United States Army, Appellant.**

**CM 441667.**

U. S. Army Court of Military Review.

28 Feb. 1983.

the court members, who were "compromised by their knowledge of an offense committed by appellant entirely external to the [trial] proceeding." We affirm.

Keith A. Rosenburg, Esquire, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Major Patrick F. Crow, JAGC, and Captain John D. Martin, JAGC.

Captain Richard G. Mann, Jr., JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel John T. Edwards, JAGC, and Captain Thomas E. Booth, JAGC.

Before HANSEN, MILLER and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

Contrary to his pleas, appellant stands convicted of rape and forcible sodomy, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925 (1976). He was sentenced by a panel with officers and enlisted members to a dishonorable discharge, confinement at hard labor for 10 years, total forfeitures, and reduction to the grade of Private E–1. On appeal he attacks: (1) his appointed defense counsel, whose "representation denied him effective assistance of counsel"; (2) the military judge, who "did not conduct his court or himself with impartiality, denying appellant due process of law"; and (3)

## I

The appellant asserts that his appointed military counsel inadequately represented him by failing to call two witnesses on the merits and by failing to respond to the staff judge advocate's post-trial review or file a petition for clemency. The two witnesses involved were a Specialist Four Frank, who had been acquitted of rape and sodomy charges stemming from the same event, and a Major Miles Wilson, Jr., M.D., the physician who examined the victim of the rape and sodomy shortly after the event. Dr. Wilson was called as a defense witness at appellant's first court-martial which had ended in a mistrial; his testimony was *inter alia* that Denise B., the victim, did not report any acts of sodomy during his examination.

Appellant's trial defense counsel, in a post-trial affidavit, explained his strategy in not calling the witnesses at trial. He had observed both witnesses testify earlier in Frank's court-martial, and additionally, observed Dr. Wilson testify in appellant's earlier court-martial. As to Frank, counsel found that although his testimony tracked appellant's in many ways, it was Frank's testimony that Watson was to blame for the injuries suffered by Denise. Frank appeared to be a credible witness. It would be counterproductive to call Frank and have him place the blame for the injuries on appellant and possibly lead the court members to conclude that each accused was lying to save himself at the expense of the other or the victim. Counsel's strategy was to present the court members with a single uncontroverted theory of the occurrence— appellant's—and by implication lay the blame on Frank. This strategy was used at Frank's trial with apparent success. It would be a conundrum in logic to argue that Watson's attorney was inadequate in failing to call Frank, while conceding that

Frank's attorney adequately represented his client though failing to call Watson. As to Dr. Wilson, counsel observed that in calling Wilson, he was "stuck with the good and the bad of his testimony." The "good" was that the victim had not reported any acts of sodomy to Dr. Wilson, suggesting that she had fabricated at least that portion of her testimony. The "bad" was that Dr. Wilson would have, in counsel's estimation, corroborated the victim's account in other respects —"her demeanor, mental state and physical condition,"[1] all of which were consistent with the reported sexual misconduct of the accused.

 The record of trial demonstrates that the representation of appellant was diligent and conscientious and that counsel exercised his skills well within the range of competence demanded of attorneys in criminal cases. *United States v. Rivas,* 3 M.J. 282 (C.M.A.1977). There is no colorable claim that appointed military counsel was totally or partially ill-prepared for trial or that he had failed to follow any reasonable leads or possible avenues of defense.[2] *United States v. Jefferson,* 13 M.J. 1 (C.M.A. 1982); *United States v. DeCoster,* 624 F.2d 196 (D.C.Cir.1979). In the light of his observations and evaluations of the witnesses, counsel concluded that it would not be in his client's best interests to call them as witnesses for the defense. With the confidence of a "Monday morning quarterback," as attorneys, we might have played the "game" differently, choosing to call either Frank or Dr. Wilson or both. It is not, however, the function of appellate courts to "second-guess the strategies or tactical decisions made at trial by defense counsel . . . [unless counsel] remains silent where there is no realistic strategical or tactical" basis for counsel's decision. *Rivas,* 3 M.J. at 289;

*see United States v. Nelson,* 582 F.2d 1246 (10th Cir.1978), *cert. denied* 439 U.S. 1079, 99 S.Ct. 860, 59 L.Ed.2d 49 (1979). We conclude that the record in its entirety reveals that appellant received effective assistance of counsel.

 Appellant has additionally asserted that trial defense counsel was deficient in his post-trial representation by failing to submit a rebuttal to the post-trial review or a petition for clemency. By affidavit, counsel responds that he orally submitted clemency information to the staff judge advocate who conveyed this information to the general court-martial convening authority in a memorandum. We wonder at the efficacy of a post-trial petition for clemency which is drafted and submitted by the staff judge advocate. The practice of delegating post-trial duties to the staff judge advocate is to be condemned, but under the facts of this case, we perceive no prejudice to appellant.

II

 Appellant contends that "[t]he military judge did not conduct his court or himself with impartiality, denying appellant due process of law." Appellant's attack, raised for the first time on appeal, is based, in part, on the Government trial counsel's challenge for cause against the military judge. The challenge was based not on any specific facts as to bias, but rather on speculations of prejudgment arising from the military judge's presiding over the acquittal of appellant's accomplice and the mistrial at appellant's first court-martial. An attempt to avoid the consequences of an expected adverse decision is not a proper basis for a challenge. *United States v. Kincheloe,* 14 M.J. 40, 50 n. 14 (C.M.A.1982). Appellant

1. Dr. Wilson observed that the victim's upper right arm was bruised and that the base of her tongue had recently sustained a small cut. Both these facts corroborated the testimony that when she initially struggled and screamed, Frank knocked her down, ripped off her halter top, and shoved it in her mouth.

2. Trial defense counsel states: "During the preparation for the first trials, [Frank's defense

counsel] and I cooperated fully with each other by jointly preparing briefs for trial, interviewing witnesses and plotting our trial strategies. I shared the fruits of any investigation of the victim in her hometown near Richmond, Virginia, with [Frank's counsel] and Private Frank. Early on [Frank's counsel] and I discussed the need to use either accused in the other's trial."

expressly refused to challenge the military judge and, thus, waived his right to object on appeal. *United States v. Airhart,* 23 U.S.C.M.A. 124, 48 C.M.R. 685 (1974); cf. *United States v. Harris,* 530 F.2d 576 (4th Cir.1976).

 Appellant's remaining objection to the military judge's conduct relates to impatience expressed by the military judge concerning unnecessary defense caused delays in resolving a defense raised motion to dismiss the charges on the grounds of double jeopardy. We do not consider, under the circumstances, that the military judge's comments were wholly inappropriate, but, in any event, his intimations of impatience, occurring almost two full weeks before the court members were impaneled, in no way prejudiced the appellant. Other allegations of judicial impropriety occurring before the members are, in our opinion, totally frivolous and without merit.

### III

Because of the remark of a court member during *voir dire,* five court members were made aware that appellant had previously been punished for possession of marihuana. Another member was aware that the appellant had received nonjudicial punishment under Article 15, UCMJ, but he was unaware of the reason why he had received it. Appellant contends the court members were biased and the military judge erred by not sustaining his challenge for cause. We disagree.

Mere familiarity with the past misconduct of an accused is not *per se* a ground for challenge for cause. Rather, it remains to the accused and his counsel to demonstrate "the actual existence of such an opinion in the mind of the [court member] as will raise the presumption of partiality." *Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975), *quoting Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1624, 6 L.Ed.2d 751 (1961). We conclude, in the circumstances of this case that appellant has failed to show the existence of a predisposition to convict appellant or that appellant was in any way prejudiced

by the off-hand remarks concerning his prior "possession." The *voir dire* in this case indicates no hostility to the appellant and belies the possibility that knowledge of the appellant's prior "possession" of drugs would have any relevance to the present case.

The five challenged members volunteered they would have no difficulty in putting the remark about "possession" out of their minds completely. LTC Johnston agreed that his knowledge of the accused and his previous Article 15 would not impact on his deliberations. Moreover, we note, the alleged misconduct was not similar to the charged misconduct and did not relate to the accused's credibility. The absence of prejudice to the appellant is further demonstrated by trial defense counsel's decision not to exercise his pre-emptory challenge against Johnston or anyone else. *United States v. Harris,* 13 M.J. 288, 293 n. 2 (C.M.A.1982) (Everett, C.J., dissenting).

The findings of guilty and the sentence are affirmed.