UNITED STATES, Appellee,

v.

Sergeant First Class Stephen B. HERD,
291–58–4455, United States
Army, Appellant.

ACMR 8801269.

U.S. Army Court of Military Review.

20 Oct. 1989.

For Appellant: Captain Thomas A. Sieg, JAGC (argued); Colonel John T. Edwards, JAGC (on brief).

For Appellee: Captain John T. Hogan, JAGC (argued); Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC (on brief).

Before MYERS, WERNER and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

MYERS, Senior Judge:

Appellant was tried by a military judge sitting as a general court-martial at Fort Benning, Georgia. Pursuant to his pleas, appellant was convicted of solicitation of another to commit murder (Charge I) and conspiracy to commit murder (Additional Charge) in violation of Articles 134 and 81, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 881 (1982) [hereinafter UCMJ or Code], respectively.[1] The military judge sentenced appellant to a dishonorable discharge, confinement for thirteen years, forfeiture of $500.00 pay per month for thirty-six months, and reduction to Private E1, but recommended that the convening authority suspend the confinement in excess of five years. The convening authority nevertheless approved the sentence *in toto.* On appeal, appellant personally and through counsel alleges three errors, as discussed below.

Appellant and his wife, the intended victim herein, had long been experiencing serious marital difficulties. On 3 March 1988, while in Drill Sergeant School at Fort Benning, Georgia, appellant encountered an old friend, Staff Sergeant (SSG) Mark Carter, his co-conspirator herein. During the conversation appellant asked SSG Carter if he knew of anyone who "could get rid of her [Mrs. Herd]", by which he meant having her killed, for which he would pay a fee of $1,500.00 to $2000.00. SSG Carter replied that he might know of such a person at Fort Stewart, Georgia. On or about 14 March 1988 SSG Carter approached Sergeant (SGT) Leslie C. Chancey[2] and asked him if he would do the job. SGT Chancey initially refused and reported the matter to his commanding officer. The latter referred him to the United States Army Criminal Investigation Command (CID) office where SGT Chancey agreed to become an informant and pretend to go along with the plot. SSG Carter arranged, but did not attend, a meeting between SGT Chancey and the appellant at SSG Carter's mobile home near Hinesville, Georgia, on 26 March 1988. There, appellant and SGT Chancey discussed the details of Mrs. Herd's killing. Among other things, appellant suggested that a shotgun be used since it left no ballistic characteristics that could be traced. Appellant gave SGT Chancey a strip map showing how to get to Mrs. Herd's home in North Carolina, a piece of paper listing what to look for in identifying her home, and three pictures of Mrs. Herd. They discussed the best time of day to go to Mrs. Herd's home, and appellant suggested different ways SGT Chancey could entice Mrs. Herd from her home. Appellant told SGT Chancey that Mrs. Herd's body should be disposed of so that it would appear she was just missing. Appellant wrote a check, payable to SSG Carter, for the purchase of a weapon and rental of a car to drive to North Carolina. They agreed that the $2,000.00 fee would be paid in four installments through SSG Carter to avoid arousing the suspicions of the police. Unbeknown to appellant, SGT Chancey had

---

1. Charge II, alleging another conspiracy with Staff Sergeant Carter, was dismissed on defense motion prior to pleas as being multiplicious with the Additional Charge.

2. SGT Chancey has since been discharged from the Army.

been "wired" and the entire conversation was thereby monitored by CID personnel.

## I

Appellant first alleges that his civilian defense counsel, Mr. R., was ineffective for failing to conduct a proper pretrial investigation of the case, specifically the interview and preparation of witnesses for testimony on appellant's behalf. In support of his contention, appellant, three of the witnesses who testified at the trial, and one prospective witness submitted affidavits alleging that Mr. R. either did not interview them at all or did not properly prepare them for their trial testimony. In response, Mr. R. submitted a lengthy affidavit detailing his actions and the reasons therefor.[3]

To prevail on a claim of ineffective assistance of counsel, appellant must show that his counsel's performance was deficient and that such deficient performance prejudiced the defense. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Failure of an attorney "to investigate a viable defense may constitute ineffective assistance of counsel." *United States v. Brooks*, 26 M.J. 930, 933 (A.C.M.R.1988). A defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. The "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Defense counsel will be granted considerable freedom to make strategic and tactical decisions regarding the presentation of evidence and argument. *See, e.g., United States v. Watson*, 15 M.J. 784 (A.C.M.R. 1983).

In this case, appellant has failed to establish that Mr. R. was ineffective. Indeed, the record establishes just the opposite. At the outset, Mr. R. accurately ascertained that the evidence against appellant was overwhelming and that appellant "had no valid defense against the charges" (Government Appellate Exhibit 1). Therefore, Mr. R.'s trial strategy was to enter a plea of guilty without a pretrial agreement, then present appellant as an outstanding soldier, model citizen, and loving father who, driven beyond the breaking point by the antics of an unfaithful wife, entered upon an irrational, impulsive, and totally uncharacteristic course of conduct which he now deeply regrets. Mr. R. successfully conveyed that impression to the military judge by downplaying what would otherwise appear to be a cruel and callous plot to murder Mrs. Herd and by skillfully presenting the wealth of extenuating and mitigating evidence available to him. On sentencing, Mr. R. called appellant's drill sergeant, a major under whom appellant previously served, a co-worker, a chaplain with whom appellant had been undergoing counselling, and appellant's mother as witnesses on appellant's behalf. His examination of the witnesses was careful, deliberate, and obviously intended to limit cross-examination, since each of them could have damaged the defense case by disclosing appellant's long-standing antipathy toward his wife. Appellant made an extensive, eloquent, and emotional unsworn statement and Mr. R. introduced twenty-six documents, including many favorable letters regarding appellant's character, letters of appreciation and commendation, three Army Commendation Medals, one Army Achievement Medal, two certificates of achievement, two certificates of training, results of skill qualification testing, several highly favorable enlisted evaluation reports, and a picture of appellant's small daughter. In closing, Mr. R. made a lengthy and eloquent argument. The effectiveness of Mr. R.'s defense of appellant is amply demonstrated by the relatively lenient sentence imposed by the military judge,[4] and by the fact that the military

---

3. Mr. R.'s affidavit is contained in Government Appellate Exhibit 1.

4. The maximum allowable sentence herein included confinement for life and total forfeitures.

judge recommended suspending the greater part of the adjudged confinement. We find, therefore, that contrary to appellant's assertions, Mr. R. represented appellant in a competent and effective manner. *United States v. Combest*, 14 M.J. 927 (A.C.M.R. 1982), *pet. denied*, 15 M.J. 324 (C.M.A. 1983).

## II

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), appellant personally asserts that his sentence should be set aside because Articles 81 and 134, UCMJ, do not specify punishments for violation thereof, providing only for punishment "as a court-martial may direct."[5] He explains that through Article 56, UCMJ, 10 U.S.C. § 856,[6] Congress authorized the President to fix maximum punishments. The President did so through the provisions of the Manual for Courts–Martial, United States, 1984 [hereinafter MCM], specifically Rule for Courts–Martial [hereinafter R.C.M.] 1003 and Part IV thereof. Thus, appellant argues that the authority granted to the President by Article 56, UCMJ, constitutes an unlawful delegation of legislative authority to the executive.

Appellant cites numerous authorities in support of his contention, such as *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (the power to define crimes and prescribe punishments therefor resides with the Congress); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (punishment for the various federal offenses is within the discretion of Congress, subject only to such constitutional limitations as the Eighth Amendment); *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) (authority to define and fix punishments for crime is wholly legislative). *See also United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924,

97 L.Ed.2d 364 (1987) (Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military). Appellant's argument is not without merit, as far as it goes, but it is as noteworthy for the precedents that it does not cite as it is for those that it does.

The nondelegation doctrine dates back to the earliest days of our republic. *See, e.g., Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 6 L.Ed. 253 (1825). The doctrine has been consistently upheld and applied since then, and most recently was reaffirmed by the United States Supreme Court in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The issue in *Mistretta* was whether the sentencing guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, as amended,[7] was an unconstitutional delegation of the legislative authority of Congress to the judiciary. In holding that it was not, the Supreme Court recognized the general rule but rejected the notion of a "hermetic division between the Branches." *Mistretta*, 109 S.Ct. at 659. While acknowledging that each of the three branches of government must remain free from the control or coercive influence of the others, "the Framers did not require— and indeed rejected—the notion that the three Branches must be entirely separate and distinct." *Id.* Accordingly, the separation of powers principle, and the nondelegation doctrine in particular, do not prevent Congress from utilizing the assistance of the other branches. "In our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Id.* at 654. Thus, so long as Congress "shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegat-

---

5. Article 134, UCMJ, provides that violators "shall be punished at the discretion of that court."

6. Article 56, UCMJ, provides: "The punishment which a court-martial may direct for an offense

may not exceed such limits as the President may prescribe for that offense."

7. 18 U.S.C., § 3551 *et seq.* (1982 ed., Supp. IV); and 28 U.S.C., §§ 991–998 (1982 ed., Supp. IV).

ed authority] is directed to conform, such legislation is not a forbidden delegation of legislative power." *Id.* (quoting *J.W. Hampton, Jr., and Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928)). "By the same token, we have upheld statutory provisions that to some degree commingle the functions of the Branches, but that pose no danger of either aggrandizement or encroachment." *Id.* 109 S.Ct. at 660 (citing *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (upholding judicial appointment of independent counsel); *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (upholding agency's assumption of jurisdiction over state-law counterclaims)). Finally, apropos to the appellant's contention herein, the Court flatly stated "[t]he sentencing function long has been a peculiarly shared responsibility among the Branches of government and has never been thought of as the exclusive constitutional province of any one Branch." *Id.* 109 S.Ct. at 664. *See also United States v. Huerta,* 878 F.2d. 89 (2d Cir. 1989).

The issue has arisen in several contexts under the UCMJ and the MCM. In *United States v. Prescott,* 6 C.M.R. 122 (C.M.A. 1952), the question addressed by the Court of Military Appeals was whether the MCM, United States, 1951, para. 127c, Section B,[8] was tantamount to the creation of an habitual criminal statute which authority resides only in the legislative branch and not the President.

An examination of the legislative history of the Uniform Code of Military Justice establishes that it was the intention of Congress to give to The President authority to fix any punishment for an offense or offenses unless such punishment was in conflict with an act of Congress.... We conclude, therefore, that the power to increase punishment, given by the Uniform Code to the Chief Executive, is not an illegal delegation of legislative authority by the Congress.

*Id.* at 124–125.

In *United States v. Hooper,* 18 C.M.R. 15 (C.M.A.1955), the Court of Military Appeals held that the Congress has the power to specify the authorities who could convene general courts-martial and that Congress could validly delegate to the President the authority to grant general court-martial jurisdiction to "any other commanding officer in any of the armed forces." UCMJ art. 22. In *United States v. Rubenstein,* 19 C.M.R. 709 (A.F.B.R.1955), *aff'd on other grounds,* 22 C.M.R. 313 (C.M.A. 1957), the appellant challenged the constitutionality of Article 3(a), UCMJ, 10 U.S.C. § 803(a),[9] on the ground, *inter alia,* that the power given the President by Article 56, UCMJ, to fix punishment also gave him the power to create jurisdiction under Article 3(a), UCMJ, which was an unconstitutional delegation of legislative power. *Rubenstein,* 19 C.M.R. at 798. On this point the Air Force Board of Review noted that all of the punitive articles of the UCMJ authorized some punishment, most of which were "as a court-martial may direct." *Id.* Article 106, UCMJ, prescribed only death, and none of the punitive arti-

---

**8.** PERMISSIBLE ADDITIONAL PUNISHMENTS. If an accused is found guilty of an offense or offenses for none of which dishonorable or bad-conduct discharge is authorized, proof of two or more previous convictions will authorize bad-conduct discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than three months, confinement at hard labor for three months....

If an accused is found guilty of two or more offenses for none of which dishonorable or bad-conduct discharge is authorized, the fact that the authorized confinement without substitution for such offenses is six months or more will, in addition, authorize bad-conduct discharge and forfeiture of all pay and allowances....

**9.** Art. 3. Jurisdiction to try certain personnel.

(a) Subject to the provisions of Article 43, any person charged with having committed, while in a status in which he was subject to this code, an offense against this code, punishable by confinement of five years or more and for which the person cannot be tried in the courts of the United States or any State or Territory thereof or of the District of Columbia, shall not be relieved from amenability to trial by courts-martial by reason of the termination of said status. Act of May 5, 1950, Pub.L. No. 90–80, 1950 U.S.Code Cong. & Admin.News (64 Stat.) 110, 112.

cles specifically limited confinement to less than life. *Id.* Articles 18, 19, and 20, UCMJ, limited the punishment power of general, special, and summary courts-martial and under Article 18, a general court-martial could impose the death penalty only as specifically authorized in the UCMJ. *Id.* at 798–99.

The Air Force Board of Review opined: Hence, clearly, the punishment authorized and prescribed *by Congress* for violation of those articles [121 and 134] is any punishment other than death that the discretion of the general court-martial may cause it to direct.... Article 56 does not authorize the President to *create* the legal punishments for offenses under the Code. Its plain terms make it clear that *Congress* intended to and did itself provide for those legal punishments in the punitive articles, and that the President's Article 56 power was intended to be only a power to *limit* them where, in his discretion, such limitations were advisable in the military establishment.... Plainly, all he [the President] can do is to *limit* punishments already legally provided. The mere fact that the Congress so recognized the power of the President to make administrative rules limiting punishment to something less than that already fixed and authorized by it by statute, did not constitute an unconstitutional delegation of legislative power, for the legislative power had already been fully exercised, and therefore could not be and was not delegated.

*Id.* at 799 (emphasis in original). *See also United States v. Smith,* 32 C.M.R. 105 (C.M.A.1962) (Congress may validly delegate to the President by Article 36, UCMJ, the authority to prescribe procedures, including modes of proof, for courts-martial); *United States v. Moore,* 39 C.M.R. 304 (A.B.R.1968); *pet. denied,* 38 C.M.R. 441 (C.M.A.1968) (Article 56, UCMJ, merely permits, rather than requires, the President to limit the sentence jurisdiction of a court-martial); *United States v. Firth,* 37 C.M.R. 596 (A.B.R.1966) (President has authority to limit punishment of hard labor without confinement in MCM, 1951, para. 126k); *United States v. Morlan,* 24 C.M.R. 390 (A.B.R.1957) (the President did not exceed his authority by prescribing in MCM, 1951, para. 126d, that officers and warrant officers may not be punished by bad-conduct discharge). *See generally Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcommittee of the House Committee on Armed Services,* 81st Congress, 1st Session, 1087–89 (1949) (hereinafter *Hearings* ).

■ It is clear to us that Congress, in enacting the UCMJ, fixed the punishments that it felt appropriate for violation of specific articles, then authorized the President to limit, within those parameters, the punishments which a court-martial may direct as to the remaining offenses. *See, e.g., Hearings* at 1089. Congress was well aware of its historical delegation to the President in this area and, in fact, alluded with apparent approval to the Table of Maximum Punishments then in effect under the 1949 Manual for Courts–Martial. *Hearings* at 1087.[10] The parameters provided by Congress for the guidance of the President are clear. Specifically, Congress has authorized the death penalty as a mandatory punishment,[11] a discretionary punishment,[12] in time of war,[13] or under certain other circumstances.[14] On the other hand, Congress has prohibited imposition of the

---

10. Mr. Smart: ... This article [proposed Article 56, UCMJ] authorizes the President to establish maximum limits of punishment for an offense, except one for which a mandatory punishment has been prescribed.

That refers, Mr. Chairman, to the table of maximum punishments which is already included in the Manual of (sic) Courts Martial, and the Navy has a comparable procedure in their court-martial proceedings.

11. UCMJ art. 106, 10 U.S.C. § 906.

12. *Id.,* arts. 94, 99, 100, 101, 102, 104, 118, and 120, 10 U.S.C. §§ 894, 899, 900, 901, 902, 904, 918, 920.

13. *Id.,* arts. 85, 90, and 113, 10 U.S.C. §§ 885, 890, 913.

14. *Id.,* arts. 106a and 110, 10 U.S.C. §§ 906a, 910.

death penalty except in time of war,[15] prescribed limits on the punishments imposable by general, special, and summary courts-martial,[16] and has prohibited branding, flogging, marking, tattooing, or any other cruel or unusual form of punishment.[17] Within those guidelines, then, the President, by virtue of Article 56, UCMJ, may only *limit* punishments that a court-martial may direct. Accordingly, we find that the Congress has, in the provisions of the UCMJ, sufficiently laid down "an intelligible principle to which the [President] is directed to conform," *Mistretta*, 109 S.Ct. at 654, and hold that Article 56, UCMJ, is not an unconstitutional delegation of legislative authority by Congress to the President.

## II

In a supplemental assignment of error, appellant asserts that the military judge erred in failing, *sua sponte*, to dismiss the solicitation to commit murder charge as being multiplicious for findings with the conspiracy to commit murder charge. *See United States v. Carter*, ACMR 8801100 (A.C.M.R. 14 March 1989) (unpub.), *pet. granted*, 28 M.J. 354 (C.M.A.1989). We disagree.

Inasmuch as this issue arose for the first time on appeal, we must first ascertain whether it was waived by appellant's failure to raise it at trial.

■■■ As previously noted, Charge II was dismissed by the military judge upon motion of appellant as being multiplicious with the Additional Charge. Appellant immediately thereafter entered pleas to the remaining two charges as hereinbefore discussed. Defenses or objections based on defects in the charges and specifications must be raised prior to entry of pleas. R.C.M. 905(b)(2). A specification which is multiplicious with another specification may, "upon timely motion by the accused," be dismissed. R.C.M. 907(b)(3)(B). Failure to raise such defense or objection "shall constitute waiver." R.C.M. 905(e). *See also United States v. Jones*, 23 M.J. 301, 303 (C.M.A.1987) (failure to move that charge be made more specific was fatal to appellate claim that charges were multiplicious); *United States v. Negron*, 28 M.J. 775, 779 (A.C.M.R.), *pet. granted*, 29 M.J. 287 (C.M.A.1989) (failure to assert multiplicity for findings at trial waives such objection); *United States v. Vogan*, 27 M.J. 882, 884 (A.C.M.R.1989) (issue affirmatively waived when accused applied multiplicity objection only to certain other specifications). However, where the charges are multiplicious on their face, thus constituting plain error, *United States v. Smith*, 27 M.J. 914, 917 (A.C.M.R.1989) (citing *United States v. Holt*, 16 M.J. 393 (C.M.A. 1983)), or where one charge is fairly embraced within another, *United States v. Shears*, 27 M.J. 509 (A.C.M.R.1988); *United States v. Conforti*, 26 M.J. 852 (A.C.M. R.1988), *pet. denied*, 28 M.J. 363 (C.M.A. 1989), the issue is preserved for appeal despite lack of objection at trial. Here, perusal of the specifications reveal that they are neither multiplicious on their face nor is one fairly embraced within the other. We hold, therefore, that this case is factually distinguishable from the *Smith*, *Holt* and *Shears* line of cases, and that it falls within the rationale of *Jones*, *Negron*, *et al*. Thus, any assertion of unreasonable multiplication of charges was waived by not having been raised at trial.

■■■ Even assuming that the issue was not waived by lack of timely motion or objection, the charges to which appellant pleaded guilty and of which he was consequently convicted were not multiplicious. The Discussion to R.C.M. 907(b)(3) provides that "[a] specification is multiplicious with another if it alleges the same offense, or an offense necessarily included in the other. A specification may also be multiplicious with another if they describe substantially the same misconduct in two different ways." In *United States v. Baker*, 14 M.J.

15. *Id.*, arts. 85, 90, and 113.

16. *Id.*, arts. 18, 19, and 20, 10 U.S.C. §§ 818, 819, 820.

17. *Id.*, art. 55, 10 U.S.C. § 855.

361 (C.M.A.1983), the Court of Military Appeals held that charges are unlawfully multiplied where:

a. The charged offenses stand in the relationship of greater and lesser offenses;

b. The charges are, in fact, parts of an indivisible crime as a matter of law; and

c. Both charged offenses are different aspects of a continuous course of conduct prohibited by one statutory provision.

*Id.* at 366.

Applying those rules to the case at bar, we find first of all that neither conspiracy nor solicitation are lesser included offenses of the other. *Compare* MCM, 1984, Part IV, paras. 5d and 105d. Neither of said charges are parts of an indivisible crime. Both allege a separate and separable crime involving two different people at different times, places, and circumstances. Finally, although both offenses were different aspects of appellant's ultimate objective, namely the murder of his wife, the offenses were nevertheless separate and distinct, neither necessarily dependent on the other, and in fact neither were necessarily indispensable parts of the overall scheme. Conspiracy and solicitation have been found to be multiplicious where the accused both solicited and conspired with the same individuals. *See, e.g., United States v. Kauble*, 22 M.J. 179 (C.M.A.1986) (summary disposition) (solicitation of an individual to commit larceny was multiplicious for findings with conspiracy with the same individual to commit the larceny); *United States v. McAnaugh*, 13 M.J. 295, 296 (C.M.A.1982) (when a thief is aided and abetted by others, he will not be separately punished for persuading the others to aid him); *United States v. Jaks*, 28 M.J. 908 (A.C.M.R.1989) (charges of solicitation of and conspiracy with the same individuals are multiplicious). However, where, as here, the appellant conspires with one person (SSG Carter), then three weeks later solicits another person (SGT Chancey) to commit the crime for which he previously conspired, obviously neither the cases just cited nor the rules set forth in *Baker* apply. We hold, therefore, that the conspiracy and the solicitation charges herein are not multiplicious.

The findings of guilty and the sentence are affirmed.

Judges WERNER and SMITH concur.