UNITED STATES

v.

**Craig S. TURNER, 368 78 3676 Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 88 0849.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 19 Aug. 1987.

Decided 24 May 1990.

LCDR L. Saccoccio, JAGC, USN, Appellate Defense Counsel.

Lt. John L. Staley, JAGC, USNR, Appellate Defense Counsel.

Lt. Mary Anne Razim, JAGC, USNR, Appellate Defense Counsel.

Lt. Col. J.S. Uberman, USMC, Appellate Government Counsel.

Lt. Scott A. Hagen, JAGC, USNR, Appellate Government Counsel.

Lt. Thomas J. Seaton, JAGC, USNR, Appellate Government Counsel.

Before McLERAN, HILTON and RUBENS, JJ.

McLERAN, Senior Judge:

Consistent with his pleas, appellant was convicted at a general court-martial with officer members of three specifications of conspiracy to distribute lysergic acid diethylamide (LSD) in violation of Article 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881 (Charge I), and 24 specifications of introducing, possessing, or distributing LSD and one specification of using marijuana in violation of Article 112a, UCMJ, 10 U.S.C. § 912a (Charge II). He was sentenced to a dishonorable discharge, confinement for 15 years, forfeiture of all pay and allowances, and reduction to E–1. The convening authority disapproved the finding of guilty of one specification of distributing LSD under Charge II, and approved the remaining findings and sentence as adjudged.

Before this Court, appellate defense counsel asserts that the military judge erred by failing to recuse himself after sitting as the military judge in a companion case, that the sentence is inappropriately severe when compared to the sentence received by the co-actor (appellant's wife), and in a supplemental assignment of error, that appellant's sentence should be set aside because Congress has unlawfully delegated its authority to determine punishments to the executive branch.

The first assignment of error does not merit discussion. We will discuss the remaining assignments of error in reverse order.

## UNLAWFUL DELEGATION OF AUTHORITY TO DETERMINE PUNISHMENTS

This assignment of error questions Congress' delegation of its legislative authority to determine criminal punishments for violations of the UCMJ to the President as Commander in Chief.

Sentencing in the military justice system has its basis in the U.S. CONST. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of...."), the U.S. CONST. art. 1, § 8, cl. 14 ("The Congress shall have the power ... to make Rules for the Government and Regulation of the land and naval Forces; ..."), the U.S. CONST. art. 2, § 2 ("The President shall be the Commander in Chief of the Army and Navy of the United States, ..."), and Article 56, UCMJ, 10 U.S.C. § 856, which states: "The punishment which a court-martial may direct for an offense may not exceed such limits as the president may prescribe for that offense."

Although defining crimes and setting punishments is entirely a legislative function,[1] in reality federal sentencing determinations are shared by the three Branches of government. The extent of this shared responsibility has been subject to limitations as to scope by congressional control, first through fixed-sentences and later through discretionary ranges established by Congress.

[U]nder the indeterminate-sentence system, Congress defined the maximum, the judge imposed a sentence within the statutory range (which it usually could replace with probation), and the Executive Branch's parole official eventually determined the actual duration of imprisonment.[2]

The Court of Military Appeals has not yet decided the issue of whether Article 56, UCMJ, constitutes a constitutional delegation of authority to the President, although all the Courts of Military Review of the military departments have considered the issue. The Army Court concluded that Congress constitutionally delegated authority to set maximum punishments to the President,[3] the Air Force Court concluded that the delegation was valid because sentencing is not a uniquely legislative function,[4] and this Court determined there was no error in a short form opinion.[5] The Court of Military Appeals has suggested, in *dicta*, that the President has the authority under Article 56, UCMJ, to prescribe maximum punishments.[6] Those military precedents notwithstanding, it seems clear that Congress may not Constitutionally delegate to the executive branch its authority without limitation to determine the authorized punishment for federal crimes.[7] That

1. See *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 5 L.Ed. 37 (1820).

2. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

3. *United States v. Herd*, 29 M.J. 702 (A.C.M.R. 1989), *pet. filed*, 29 M.J. 443 (1989).

4. *Biondi v. United States*, AFCMR Misc. Dkt. No. 88–05, 1989 WL 80374 (A.F.C.M.R. 27 June 1989), *writ appeal pet. for review of AFCMR decision on application for extraordinary relief filed*, 29 M.J. 271 (1989), *pet. denied* 29 M.J. 307 (C.M.A.1989).

5. *United States v. Nigro*, No. 87 4188 (30 September 1988), *aff'd. on other grounds*, 28 M.J. 415 (C.M.A.1989).

6. "The congressional delegation of powers to the President has traditionally been quite broad in the field of military justice. Pursuant to Article 36 of the Uniform Code, the President promulgates rules to govern pretrial, trial, and post-tri-al procedures of courts-martial. Unlike other Federal criminal statutes, the punitive articles of the Uniform Code for the most part authorize punishment 'as a court-martial may direct'; [sic] no maximum or minimum sentence is specified. However, as contemplated by Article 56 ..., the President prescribes maximum punishments for the various offenses.... The great breadth of the delegation of power to the President by congress with respect to ... sentences grants him the authority to remedy the present defect in the court-martial sentencing procedure for capital cases...." *United States v. Matthews*, 16 M.J. 354, 380–81 (C.M.A.1983).

7. See *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). *See also Solorio v. United States*, 483 U.S. 435, 446, 107 S.Ct. 2924, 2930, 97 L.Ed.2d 364, 375 (1987) ("The unqualified language of [U.S. CONST. art. 1, § 8,] Clause 14 suggests that whatever these concerns, they were met by vesting in Congress, rather than the Executive authority to make rules for the government of the military); *United States v.*

is not to say, however, that Congress may not delegate its authority to the executive where the delegation "is sufficiently specific and detailed to meet constitutional requirements," [8] so long as Congress provides reasonable guidance and definitions of policy standards and matters to be covered. [9]

■ Congress may delegate legislative discretion to the President if reasonable guidance and definitions of policy standards are set forth. [10] The standards may be broad; [11] consequently, the test for evaluating a claim of unconstitutional delegation is "whether such standards are sufficiently definite in light of the complexity of the area at which the legislation is directed and the susceptibility to change of the area in question." [12] The recent Supreme Court pronouncement on the constitutionality of the Congressional delegation of authority to the Sentencing Commission under the Sentencing Reform Act reaffirmed the need for sufficient specificity and detail. [13]

Congress has placed limitations on the discretion to prescribe maximum punishments delegated to the President in Article 56, UCMJ, in the following specific instances:

A.  Article 16, UCMJ.  Three classifications of courts-martial: general, special and summary courts-martial (in order of maximum punishments imposable).

1.  Article 18, UCMJ.  General courts-martial may adjudge any punishment not forbidden, including the death penalty, with other limitations as prescribed by the President.

2.  Article 19, UCMJ.  Special courts-martial may adjudge any punishment not forbidden except death, dishonorable discharge, dismissal, confinement for more than 6 months, hard labor without confinement for more than 3 months, forfeiture of pay exceeding two-thirds pay per month for more than 6 months, with other limitations as prescribed by the President.

3.  Article 20, UCMJ.  Summary courts-martial may not try (or punish) officers, cadets, and midshipmen, or capital offenses, and may adjudge any punishment not forbidden except death, dismissal, dishonorable or bad-conduct discharge, confinement for more than 1 month, hard labor without confinement for more than 45 days, restriction for more than 2 months, or forfeiture of more than two-thirds of a month's pay.

B.  Articles 22 through 24, UCMJ, set limitations on who can convene the three types of courts-martial, by rank and position within the armed forces.

C.  Article 52, UCMJ.  Unanimity of members required to *convict* where death is a mandatory punishment for the offense.  Unanimity is required to adjudge death as a punishment for an offense expressly made punishable by death.  Sentence to life imprisonment or confinement for more than 10 years requires concurrence of three-fourths of the members.

D.  Article 55, UCMJ.  "Punishment by flogging, or by branding, marking, or tattooing on the body, or any other cruel or unusual punishment, may not be adjudged....  The use of irons, single or double, ... is prohibited."

*Evans,* 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823, 826 (1948) ("In our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial, functions.").

8.  *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 655, 102 L.Ed.2d 714 (1989).

9.  *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940).  *See also American Power & Light Co. v. SEC,* 329 U.S. 90, 105, 67 S.Ct. 133, 142, 91 L.Ed. 103, 116 (1946) ("[C]onstitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.").

10.  *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); *American Power & Light Co. v. SEC,* 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946).

11.  *United States v. Gordon,* 580 F.2d 827 (5th Cir.1978) (citing *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952).

12.  *Gordon,* 580 F.2d at 839.

13.  *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

E. Article 58a, UCMJ. A sentence which includes a dishonorable or bad-conduct discharge, confinement, or hard labor without confinement, results in an "automatic" reduction to pay grade E–1.

These Congressionally enacted limitations are, in effect, mandatory policy guidance, since the President in prescribing the Manual For Courts–Martial is bound by the provisions of the UCMJ.[14] In terms of the President's authority to prescribe rules to implement Congressional delegations of authority, such as those found in Article 36, UCMJ, 10 U.S.C. § 836, authorizing the President to prescribe procedures for cases arising under the UCMJ, he is bound by statutory provisions established by Congress.

In the punitive articles [15] Congress has defined offenses and established maximum punishments. The punishments range from mandatory death for spying in violation of 106, UCMJ, 10 U.S.C. § 906, to "death or such other punishment as the court-martial may direct," [16] to punishment "as the court-martial may direct." [17]

In the Manual for Courts–Martial (MCM), United States, 1984, the President, as Commander in Chief of the armed forces, has promulgated sentencing rules in furtherance of Article 56, UCMJ. However, the President's actual implementation of Article 56, UCMJ, is not in issue; rather, the sole issue is whether Article 56, UCMJ, as a delegation to the President from Congress, meets Constitutional criteria.

There is no other guidance or policy standards emanating from Congress to the President relative to sentencing under the UCMJ.

A number of the limitations contained in the UCMJ and enumerated above are not limitations on the President or guidance directed at controlling the exercise of his discretion under Article 56, UCMJ. For example, the limitations on the maximum sentences imposable by each of the three types of courts-martial do not in any way affect the exercise of discretion when determining which of the three courts-martial forums should try a particular accused for a particular offense, since the UCMJ does not generally limit forum selection.[18] The

---

**14.** Article 56, UCMJ. *See United States v. Kelson, 3 M.J. 139 (C.M.A.1977).*

**15.** Articles 77 through 134, UCMJ, 10 U.S.C. §§ 877–934.

**16.** Articles which authorize the death penalty under certain circumstances: Articles 85 (desertion), 90 (assaulting or willfully disobeying superior commissioned officer), 94 (mutiny or sedition), 106a (espionage), 110 (improper hazarding of vessel), 113 (misbehavior of a sentinel), 118 (murder), and 120 (rape).

**17.** Articles which specify only punishment "as a court-martial may direct:" Articles 78 (accessory after the fact), 80 (attempts), 81 (conspiracy), 82 (solicitation), 83 (fraudulent enlistment, appointment, or separation), 84 unlawful enlistment, appointment, or separation), 86 (absence without leave), 87 (missing movement), 88 (contempt toward officials), 89 (disrespect toward superior commissioned officer), 91 (insubordinate conduct), 92 (failure to obey order or regulation), 93 (cruelty and maltreatment), 95 (resistance, breach of arrest, and escape), 96 (releasing prisoner without proper authority), 97 (unlawful detention), 98 (noncompliance with procedural rules), 99 (misbehavior before the enemy), 100 (subordinate compelling surrender), 101 (improper use of countersign), 102

(forcing a safeguard), 103 (captured or abandoned property), 104 (aiding the enemy), 105 (misconduct as prisoner), 107 (false official statements), 108 (loss, damage, destruction, or wrongful disposition of military property of the United States), 109 (waste, spoilage, or destruction of non-military property), 111 (drunken or reckless driving), 112 (drunk on duty), 114 (dueling), 115 (malingering), 116 (riot or breach of peace), 117 (provoking speeches or gestures), 119 (manslaughter), 121 (larceny and wrongful appropriation), 122 (robbery), 123 (forgery), 123a (making, drawing, or uttering check, draft, or order without sufficient funds), 124 (maiming), 125 (sodomy), 126 (arson), 127 (extortion), 128 (assault), 129 (burglary), 130 (housebreaking), 131 (perjury), 132 (frauds against the United States), 133 (conduct unbecoming an officer and a gentleman), and 134 (general article).

**18.** *But see* Articles 19 and 20, UCMJ, 10 U.S.C. §§ 819, 820, Article 19, UCMJ, provides that special courts-martial have jurisdiction to try anyone subject to the UCMJ for noncapital offenses and for capital offenses under such regulations as the President may prescribe. Article 20, UCMJ, provides that summary courts-martial have jurisdiction to try any person subject to the UCMJ except officers, cadets, aviation cadets, and midshipmen, for noncapital offenses.

only limitations on the President's discretion to set maximum punishments are Article 55, UCMJ, 10 U.S.C. § 855, which prohibits certain forms of punishment, the mandatory punishment of death prescribed for spying in violation of Article 106, UCMJ, and the inability of the President to authorize death as a punishment for a violation of the UCMJ unless specifically authorized for that particular violation. Otherwise, the limitation is that punishment which the court-martial may direct.[19]

We conclude, therefore, that the delegation to the President to set maximum punishments contained in Article 56, UCMJ, is not "sufficiently definite in light of the complexity of the area at which the legislation is directed and the susceptibility to change of the area in question," [20] since Congressionally mandated standards relating to setting sentence maximums applicable to the President are virtually non-existent.[21]

■ We next turn our attention, however, to whether the Article 56 delegation can be upheld under any other constitutionally-acceptable principle.

"The congressional delegation of powers to the President has traditionally been quite broad in the field of military justice." [22] Historically, Congress prescribed mandatory sentences for certain violations of military law (in which the court has no discretion but to pronounce the required sentence), as well as left the punishment to the absolute discretion of the court for other violations, unlike the Federal system. In 1890, an Act of Congress, "enacted for the purpose of inducing something like uniformity in the penalties adjudged by courts-martial in similar cases," [23] provided that in time of peace the punishment shall not exceed the limits set by the President for those discretionary punishments.[24] Restrictions on the bounds of the court's discretion were further prescribed by the Constitution, by statute and by military usage.[25]

The Court of Military Appeals has recognized the special relationship between Congress and the President in the area of sentencing under the UCMJ in several cases. In discussing a challenge to the President's authority to impose an automatic reduction in grade when the adjudged sentence includes a dishonorable or bad-conduct discharge, confinement, or hard labor without confinement, Judge La-

---

**19.** One possible answer to this Constitutionally-based challenge is that Congress *has* provided all necessary guidance and set sufficient standards when it decreed, generally, in Articles 78 through 134, UCMJ, that the maximum punishment is that which a court-martial may direct—the maximum punishment was set, up to and including life imprisonment, and the President simply exercises Congressionally authorized "pretrial clemency" which accrues to the benefit of the individual accused. This answer, however, assumes that Congress could set life imprisonment as the general maximum punishment for all offenses (with exceptions for those offenses for which death is authorized), (*see supra* notes 17 and 18) an action of questionable constitutional validity in light of the Constitutional principle of disproportionality as discussed by the Supreme Court in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *See also Hart v. Coiner,* 483 F.2d 136 (4th Cir.1973), *cert. denied,* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974).

We prefer to believe, in light of the sentence maximums specified for violations of other federal criminal statutes and Congress' apparent satisfaction with the maximum sentence limitations set by the President as Commander in Chief, as further evidenced by the fact that Congress has never taken action itself to "overturn" the President's maximum punishment limitations, that Congress did not intend for military accuseds to be subject to such an unlimited sentencing scheme, saved only by the "grace" of the President.

**20.** *See United States v. Gordon,* 580 F.2d 827 (5th Cir.1978).

**21.** Compare the few sentence setting guidelines contained in the UCMJ, with the guidelines upheld by the Supreme Court in *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 655, 102 L.Ed.2d 714 (1989).

**22.** *United States v. Matthews,* 16 M.J. 354, 380 (C.M.A.1983).

**23.** WINTHROP, MILITARY LAW AND PRECEDENTS 395 (2d ed. 1920).

**24.** *See* WINTHROP, MILITARY LAW AND PRECEDENTS 395 (2d ed. 1920).

**25.** *See generally* WINTHROP, MILITARY LAW AND PRECEDENTS 396–400 (2d ed. 1920).

timer (concurring in part and dissenting in part), wrote:

[The President] has been given certain powers by the Constitution as Commander-in-Chief and, when operating under that grant of power or even under a legislative grant, he is not limited by the fine niceties differentiating the three Departments of the Government. Those departments are not necessarily disjointed, as they are partly interacting and, when I give consideration to the traditional way in which the Legislative Department and the Executive Department have jointly collaborated to govern the armed forces, I find a recognition by Congress that the Chief Executive may invade the sentence field and make regulations even though in so doing he does not stay strictly within the tripartite distribution of power. In short, in that field which may involve executive, judicial, and legislative functions, we have a systematic, unbroken executive practice, pursued for over the entire life of this country with the knowledge and blessing of Congress, and never up to this date legally questioned by that body. Why, then, should we be so hypertechnical about departmentalizing his functions to deny him powers which have been continuously recognized? ... If there ever was a field which has been common to the Executive and Legislative Departments, it is the area of sentence in military law.

*United States v. Simpson,* 10 U.S.C.M.A. 229, 238, 27 C.M.R. 303, 312–13 (1959). In one of the earliest cases decided by the Court of Military Appeals dealing with the authority of the President to prescribe additional punishments, Chief Judge Quinn, in *dicta,* did not hesitate to approve the President's maximum punishment limitations in Paragraph 127 of the then existing Manual for Courts–Martial, United States, 1951, when he stated:

The President, pursuant to the power vested in him by the Congress, prescribed ... Paragraph 127 which prescribes limitations of punishment. This action on the part of The [sic] President

of the United States constituted an exercise of the executive authority granted to him by Congress.... An examination of the legislative history of the Uniform Code of Military Justice establishes that it was the intention of Congress to give to The President authority to fix any punishment for an offense or offenses unless such punishment was in conflict with an act of Congress.... The prescribed punishments in these paragraphs are not new or foreign to the customs and traditions of the several military departments. [Citations omitted.]

*United States v. Prescott,* 2 U.S.C.M.A. 124–25, 6 C.M.R. 122, 124–25 (1952).

More recently, Chief Judge Everett, while writing for the Court of Military Appeals in a case involving the procedural aspects of the death penalty, impliedly upheld Congress' delegation to the President under Article 56, UCMJ, when he stated:

The congressional delegation of powers to the President has traditionally been quite broad in the field of military justice. Pursuant to Article 36 of the Uniform Code, the President promulgates rules to govern pretrial, trial, and posttrial procedures of courts-martial. Unlike other Federal criminal statutes, the punitive articles of the Uniform Code for the most part authorize punishment "as a court-martial may direct"; [sic] no maximum or minimum sentence is specified. However, as contemplated by Article 56 of the Uniform Code, ... the President prescribes maximum punishments for the various offenses.

*United States v. Matthews,* 16 M.J. 354, 380–81 (C.M.A.1983).

The Supreme Court of the United States recently has recognized the unqualified language of U.S. CONST. art. 1, § 8, cl. 14 which grants Congress the authority to make rules for the government of the military, and that "[o]n its face there is no indication that the grant of power in Clause 14 was any less plenary than the grants of other authority to Congress in the same section." [26] Of even greater significance, however, is that Court's recognition that

---

**26.** *Solorio v. United States,* 483 U.S. 435, 441, 107 S.Ct. 2924, 2928, 97 L.Ed.2d 364, 372 (1987).

the Uniform Code of Military Justice "cannot be equated to a civilian criminal code,"[27] while noting that "all of the offenses described in the Code are punishable 'as a court-martial may direct' ... "[28]

The responsibility for governing and operating the military forces clearly is shared between Congress and the President as Commander In Chief. Even though Clause 14 gives Congress the rule-making authority, "the military 'is the executive arm' whose 'law is that of obedience.'"[29]

We believe that there is a special, long-standing, non-traditional constitutional relationship between Congress and the President as concerns the government of the military, such that the normal rules regarding separation of powers and Congressional delegation do not apply. Consequently, we hold that the delegation to the President contained in Article 56, UCMJ, is not an unlawful delegation of authority, but rather is one that is inherent in the nature of the relationship between Congress and the President in fulfilling their jointly-shared responsibilities to provide for the nation's defense.

## APPROPRIATENESS OF SENTENCE

■ In this assignment of error, appellant urges that confinement for 15 years is an inappropriately severe sentence. Appellate counsel notes that appellant's wife, who was charged with essentially the same offenses according to appellate briefs and other information contained in the record of trial, received a sentence of 16 years which was subsequently reduced to 8 years by the convening authority pursuant to a pretrial agreement. Counsel argues that appellant's sentence should be reduced to eliminate the great disparity in the two similar cases.

■ Sentence appropriateness should be judged, generally, by individualized consid-

erations, taking into account the nature and seriousness of the offenses and the character of the accused, without reference or comparison to sentences in other cases. *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982); *United States v. Olinger,* 12 M.J. 458 (C.M.A.1982). While trial and appellate courts cannot be *required* to consider other sentences,[30] they should be considered "when there are highly disparate sentences in closely related cases."[31]

Appellate briefs and the record of trial show the following factors, among others, bearing on the appropriateness of the sentence:

—following pleas of guilty, appellant stands convicted of three specifications of conspiracy to distribute LSD, three specifications of possessing with intent to distribute a total of 3700 units of LSD, 19 specifications of distributing approximately 1800 units of LSD (some, but not all, to Marine Corps personnel), one specification of introducing some LSD aboard a military installation, and one specification of possession of some marijuana.

—the maximum punishment for the separate offenses to which appellant plead guilty was in the neighborhood of 400 years.

—appellant's command was responsible for heavy equipment, rigging parachutes and handling explosives.

—LSD is a long-lasting hallucinogen which causes a complete alteration in a person's perception of reality, with the possibility of flashbacks long after the initial effects have worn off.

—appellant was only 21 years old at the time of the offenses, was an outstanding Marine, even after his arrest by civilian authorities, and his cooperation with both civilian and military authorities after his arrest resulted in the eventual termi-

**27.** *Parker v. Levy,* 417 U.S. 733, 749, 94 S.Ct. 2547, 2558, 41 L.Ed.2d 439, 454 (1974).

**28.** *Id.* at 750, 94 S.Ct. at 2559, 41 L.Ed.2d at 454.

**29.** *Id.* at 751, 94 S.Ct. at 2559, 41 L.Ed.2d at 455, quoting *In re Grimley,* 137 U.S. 147, 153, 11 S.Ct. 54, 55, 34 L.Ed. 636, 639 (1890).

**30.** *United States v. Ballard,* 20 M.J. 282 (C.M.A. 1985).

**31.** *United States v. Olinger,* 12 M.J. at 460.

nation of a nationwide LSD distribution and manufacturing ring.

—appellant's crimes were motivated solely by the profit motive, and the LSD distribution operation was an ongoing business for a period of at least 6 months.

—other Marines had become involved in appellant's scheme, had been arrested and court-martialed as a direct result of appellant's actions in involving them in his operation; information concerning related cases is included in the Court–Martial Order.

—even though appellant's wife was also involved, appellant appeared to be the ring-leader.

Clemency letters submitted to the convening authority after the court-martial reiterated that appellant and his wife cooperated extensively with investigators after their arrest. One of these letters, from appellant's mother, stated that among other punishments visited upon appellant and his wife as a result of their activity, their house had been foreclosed upon and their cars voluntarily repossessed.

Based on the offenses of which appellant has been found guilty, we do not believe that the sentence appellant received was inappropriately severe, even when compared to the sentences we are familiar with as a result of reviewing other drug distribution cases. Certainly, as between appellant and his wife, their adjudged sentences were nearly identical. It is only as a result of the convening authority's action as required by a pretrial agreement that appellant's co-conspirator's sentence was reduced from 16 to 8 years. There has been no suggestion in appellant's brief, nor do we ascertain ourselves, any impropriety on the part of the convening authority in negotiating a "better" pretrial agreement with appellant's co-conspirator than with appellant. We do not believe that the difference in the two sentences which was created as a result of the convening authority's action requires corrective action.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Judge HILTON and Judge RUBENS concur.