Rafi Dhakaa KHAN Petitioner–
Appellant,

v.

Col. William L. HART, Respondent–
Appellee.

No. 91–3022.

United States Court of Appeals,
Tenth Circuit.

Sept. 5, 1991.

Rafi Dhakaa Khan, pro se.

Lee Thompson, U.S. Atty., Melanie Karo, Asst. U.S. Atty., Topeka, Kan. and Major Alice Kottmyer, Trial Atty., HQ USAF/ JACL, General Litigation Div., Washington, D.C. for respondent-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Rafi Dhakaa Khan, confined in disciplinary barracks at Ft. Leavenworth, Kansas, appeals from the dismissal of his habeas corpus petition. 28 U.S.C. § 2241. Petitioner pled guilty to several offenses including rape and robbery and was sentenced to dishonorable discharge, confinement for twenty-seven years, forfeiture of all pay and allowances and reduction to the grade of E–1. The Air Force Court of Military Review reviewed his case and affirmed, and the Court of Military Appeals denied his petition for review.

■ Several years later, petitioner sought extraordinary relief from the Court of Military Appeals on the new theory that art. 56 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 856,[1] is an unlawful delegation of congressional power because the President may set maximum penalties for offenses. He also claimed that the punishment under the UCMJ is vague.[2] In a formulary order, the Court of Military Appeals "denied the petition for extraordinary relief in the nature of a writ of habeas corpus." Petitioner then filed this habeas action in federal district court urging the same grounds. The district court denied relief on the merits. *See Khan v. Hart*, No. 90–3359–R, unpub. order (D.Kan. Jan. 4, 1991) [1991 WL 3125]. On appeal, petitioner argues that (1) the UCMJ must prescribe with certainty and clarity the consequences of a violation, (2) Congress must set forth reasonable and intelligible standards for the President to derive UCMJ criminal penalties, and (3) because these conditions are not met, his conviction cannot be sustained. Petition-

er's Brief (Form A–11) at 6. We construe petitioner's claims as a straightforward challenge to art. 56, UCMJ, as contrary to the nondelegation doctrine.[3]

As an initial matter, we note that the government answered the petition and sought dismissal on the merits. Our review of the district court's resolution of this habeas petition is *de novo*. *Monk v. Zelez*, 901 F.2d 885, 888 (10th Cir.1990). Neither the district court nor the parties addressed the scope of federal civil review of petitioner's court-martial, however, and we raise the issue *sua sponte*.

■ Our jurisdiction to review a military conviction for constitutional error is limited because habeas jurisdiction of a federal civil court does not extend to a reassessment of the facts and issues fully and fairly considered by a military court. *Burns v. Wilson*, 346 U.S. 137, 142, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953); *Lundy v. Zelez*, 908 F.2d 593, 594–95 (10th Cir.1990). *See also* art. 76, UCMJ; 10 U.S.C. § 876 (final, conclusive and binding nature of court-martial proceedings). In *Dodson v. Zelez*, 917 F.2d 1250 (10th Cir. 1990), we listed four factors which may inform the scope of our jurisdiction: (1) whether the claimed error is of substantial constitutional dimension, (2) whether a legal issue is involved, rather than a factual issue previously resolved by military courts, (3) whether military considerations may warrant different treatment of constitutional claims such that federal civil court intervention would be inappropriate, and (4) whether the military courts have given adequate consideration to the claimed error and applied proper legal standards. *Id.* at

---

1. Art. 56, UCMJ, provides:
   **Maximum limits**
   The punishment which a court martial may direct for an offense may not exceed such limits as the President may prescribe for that offense.
   10 U.S.C. § 856.

2. From our independent research, it appears that petitioner first sought habeas relief on these claims in the federal district court in Kansas. The district court denied relief for failure to exhaust military remedies. *Khan v. Berrong*, No. 88–3406–O, unpub. order (D.Kan. Jan. 3, 1990) [1990 WL 11014].

3. Art. I, § 1, cl. 1 of the United States Constitution provides: "All legislative Powers herein shall be vested in a Congress of the United States...." The nondelegation doctrine is based upon separation of powers and provides "that Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 372, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989). Congress may, however, seek the assistance of other branches of government provided that Congress legislates an intelligible principle to guide the performance of the delegated duty. *Id.*

1252–53 (relying on *Calley v. Callaway*, 519 F.2d 184, 199–203 (5th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976)). In addition, "federal courts will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted." *Schlesinger v. Councilman*, 420 U.S. 738, 758, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975); *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986).

■ The following factors favor our review: (1) a substantial constitutional question has been raised concerning the nondelegation doctrine as applied to art. 56, UCMJ, (2) the question is one of law, which has not been addressed by the Court of Military Appeals, although it has been rejected by other military courts for varying reasons, *compare United States v. Turner*, 30 M.J. 1276, 1277–83 (N.M.C.M.R.1990) (delegation not sufficiently definite, but upheld because of special relationship between Congress and President in military affairs) *with United States v. Herd*, 29 M.J. 702, 705–08 (A.C.M.R.1989) (delegation upheld), *review granted in part*, 30 M.J. 220, *aff'd in part and judgment set aside in part*, 32 M.J. 33 (C.M.A.1990), (3) the question does not turn on disputed facts, (4) the formulary order of the Court of

Military Appeals denying relief does not indicate the consideration given to petitioner's claims or admit of review, *see King v. Moseley*, 430 F.2d 732, 734 (10th Cir.1970), (5) petitioner attempted to exhaust his military remedies, and (6) the government does not argue that review is inappropriate, but rather has defended on the merits, *see Mendrano v. Smith*, 797 F.2d 1538, 1542, n. 6 (10th Cir.1986). On the other hand, the potential for a different constitutional norm on this nondelegation issue would counsel against review, *see Turner*, 30 M.J. at 1281–83, however, we strike the balance in favor of review.

■ At the time petitioner was sentenced, the President had promulgated maximum limits of punishment in accordance with art. 56, UCMJ. *See* Manual for Courts–Martial, United States, 1969 § 127 (rev. ed.).[4] Under the UCMJ, Congress defined the offenses and provided for maximum penalties. In the punitive articles,[5] Congress provided for punishment "by death,"[6] "by death or imprisonment for life as a court martial may direct,"[7] "by death or such other punishment as a court-martial may direct,"[8] "punishment, other than death, as a court martial may direct,"[9] punishment "as a court-martial may direct,"[10] and finally, punishment "at the

---

**4.** The current version is the Manual for Courts–Martial, United States, 1984 pt. II, R. 1003; pt. IV & app. 12.

**5.** Arts. 77–134, UCMJ; 10 U.S.C. §§ 877–934.

**6.** Art. 106 (spying in time of war), UCMJ; 10 U.S.C. § 906.

**7.** Art. 118(1) & (4) (premeditated murder & felony murder), UCMJ; 10 U.S.C. § 918(1) & (4).

**8.** Arts. 85 (desertion in time of war), 90 (assaulting or willfully disobeying superior commissioned officer in time of war), 94 (mutiny or sedition), 99 (misbehavior before the enemy), 100 (subordinate compelling surrender), 101 (improper use of countersign), 102 (forcing a safeguard), 104 (aiding the enemy), 106a (espionage), 110(a) (willfull and wrongful hazarding of vessel), 113 (misbehavior of sentinel in time of war) & 120(a) (rape), UCMJ; 10 U.S.C. §§ 885, 890, 894, 899, 900, 901, 902, 904, 906a, 910(a), 913 & 920(a).

**9.** Arts. 85 (desertion not in time of war), 90 (assaulting or willfully disobeying superior

commissioned officer not in time of war), & 113 (misbehavior of sentinel not in time of war), UCMJ; 10 U.S.C. §§ 885, 890 & 913.

**10.** Arts. 78 (accessory after the fact), 80 (attempts), 81 (conspiracy), 82 (solicitation), 83 (fraudulent enlistment, appointment or separation), 84 (unlawful enlistment, appointment or separation), 86 (absence without leave), 87 (missing movement); 88 (contempt toward officials), 89 (disrespect toward superior commissioned officer), 91 (insubordinate conduct toward warrant officer, noncommissioned officer or petty officer), 92 (failure to obey order or regulation), 93 (cruelty and maltreatment), 95 (resistance, breach of arrest, and escape), 96 (releasing prisoner without proper authority), 97 (unlawful detention), 98 (noncompliance with procedural rules), 103 (captured or abandoned property), 105 (misconduct as a prisoner), 107 (false official statements), 108 (loss, damage, destruction, or wrongful disposition of military property of United States), 109 (waste, spoilage or destruction of property, other than military property, of the United States), 110(b)

discretion of [the] court." [11] Certain forms of punishment, deemed to be cruel and unusual, are not allowed.[12] Thus, the incorporated limitations on the President's discretion include a mandatory death penalty for spying, *see supra* note 6, a death penalty or life imprisonment for premeditated or felony murder, *see supra* note 7, a limitation on use of a death penalty without an express allowance in the punitive articles, *see supra* notes 6, 7 & 8; *Turner,* 30 M.J. at 1281, and a limitation on forms of punishment, *see supra* note 12.

Without question, the President has considerable discretion in this scheme. But that does not mean that the scheme is contrary to the nondelegation doctrine. Several principles inform our judgment. First, Congress may seek assistance from other branches of government, "the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the governmental co-ordination." *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928). The need for governmental coordination between the Congress and the President in military affairs is essential because the President is the commander in chief of the armed forces. U.S. Const. art. II, § 2, cl. 1. The special relationship between the Congress and the President in military affairs suggests that a narrow or technical view of the delegation issue would not be appropriate. *See United States v. Chemical Found.,* 272 U.S. 1, 12, 47 S.Ct. 1, 5, 71 L.Ed. 131 (1926) (power to dispose of enemy property delegated to President was not an unlawful delegation of legislative power; "[i]t was peculiarly within the province of the Commander–in–Chief to know the facts and to determine what disposition should be made of enemy properties in order effectively to carry on the war").

Second, Congress need only "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *Hampton,* 276 U.S. at 409, 48 S.Ct. at 352. "Only if we could say that there is an absence of standards for the guidance of the [President's] action, so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed, would we be justified in overriding its choice of means" for further limiting the punishments which a court-martial may direct. *See Yakus v. United States,* 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944). In enacting the UCMJ, Congress is presumed aware of the manner in which the President had exercised his delegated authority to limit military punishment. *See Herd,* 29 M.J. at 707 (concluding that Congress was aware in fact of the Table of Maximum Punishments in the Manual for Courts–Martial, United States, 1949).

This is not a delegation in which the President effectively determines what conduct is criminal. *See Touby v. United States,* — U.S. —, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991) (temporary scheduling

---

(negligent improper hazarding of vessel), 111 (drunken or reckless driving), 112 (drunk on duty), 112a (wrongful use, possession, etc. of controlled substances), 114 (dueling), 115 (malingering), 116 (riot or breach of peace), 117 (provoking speeches or gestures), 118(2) & (3) (murder with intent to kill or to inflict great bodily harm & murder while engaged in inherently dangerous act), 119 (manslaughter), 120(b) (carnal knowledge), 121 (larceny and wrongful appropriation), 122 (robbery), 123 (forgery), 123a (making, drawing or uttering check, draft or order without sufficient funds), 124 (maiming), 125 (sodomy), 126 (arson), 127 (extortion), 128 (assault), 129 (burglary), 130 (housebreaking), 131 (perjury), 132 (frauds against the United States) & 133 (conduct unbecoming an officer and a gentleman), UCMJ; 10 U.S.C. §§ 878, 880, 881, 882, 883, 884, 886, 887, 888, 889, 891, 892, 893, 895, 896, 897, 898, 903, 905, 907, 908, 909, 910(b), 911, 912, 912a, 914, 915, 916, 917, 918(2) & (3), 919, 920(b), 921, 922, 923, 923a, 924, 925, 926, 927, 928, 929, 930, 931, 932 & 933.

**11.** Art. 134 (general article), UCMJ; 10 U.S.C. 934.

**12.** Art. 55, UCMJ, provides:

Punishment by flogging, or by branding, marking, or tatooing on the body, or any other cruel or unusual punishment, may not be adjudged by any court-martial or inflicted upon any person subject to this chapter. The use of irons, single or double, except for the purpose of safe custody, is prohibited.
10 U.S.C. § 855.

of controlled substances by Attorney General upheld); *Fahey v. Mallonee,* 332 U.S. 245, 249, 67 S.Ct. 1552, 1553, 91 L.Ed. 2030 (1947). Rather, Congress has defined what conduct is criminal, provided various categories of punishment indicative of its view of the gravity of each offense, restricted the form of punishment, and relied upon the President to further limit punishment in accordance with operating the military. Though not nearly as specific a delegation as the delegation to the United States Sentencing Commission approved in *Mistretta v. United States,* 488 U.S. 361, 371–79, 109 S.Ct. 647, 654–58, 102 L.Ed.2d 714 (1989), we believe that, given the President's unique role in national defense, it is a sufficiently intelligible delegation to satisfy constitutional concerns.

We GRANT petitioner leave to proceed on appeal *in forma pauperis,* 28 U.S.C. § 1915(a), GRANT petitioner a certificate of probable cause, 28 U.S.C. § 2253, *see Lozada v. Deeds,* —— U.S. ——, 111 S.Ct. 860, 861–62, 112 L.Ed.2d 956 (1991), and AFFIRM the district court's judgment denying habeas relief.