**DAIRY PRODUCERS OF NEW MEXICO, Plaintiff–Appellant,**

v.

**Ann M. VENEMAN, Secretary, United States Department of Agriculture, Defendant–Appellee.**

No. 01–2091.

United States Court of Appeals, Tenth Circuit.

June 13, 2002.

**472**

Before HENRY, PORFILIO, Circuit
Judges, and SAM, District Judge.*

## ORDER AND JUDGMENT **

HENRY, Circuit Judge.

The Dairy Producers of New Mexico ("Dairy Producers") is a trade association that represents dairy farmers in New Mexico and western Texas. Dairy Produc-

ers challenges the Secretary of Agriculture's (the "Secretary") adoption of certain regulations controlling the disbursement of $200 million in emergency assistance to dairy farmers. Dairy Producers maintains that the regulations promulgated by the Secretary pursuant to the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999 Pub. Law. No. 105–277, 112 Stat. 2681 (Oct. 21, 1998) (the "Agriculture Appropriations Act") disproportionately favored small dairy farmers. Specifically, it contends that: (1) Section 1111 of the Act is an unconstitutional delegation of Congress' power to an executive agency and (2) that the Secretary acted arbitrarily and capriciously in promulgating the regulations. In granting summary judgment to the Secretary, the district court, in a thorough and well-reasoned order, found that the Secretary's adoption of the disputed regulations was a lawful exercise of delegated authority under the Agriculture Appropriations Act. We affirm the district court's order.

## I. BACKGROUND

In October 1998, responding to a sharp decline in milk prices that was causing a severe hardship in the dairy industry, Congress appropriated $200 million in the Agriculture Appropriations Act for Fiscal Year 1999 for the USDA "to provide assistance to dairy producers in a manner determined by the Secretary." Pub L. No. 105–277, § 1111(d), 112 Stat. 2681 (Oct. 21, 1998).[1] In May 1999, the Commodity

---

* The Honorable David Sam, Sr., United States District Judge for the District of Utah, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. The Agriculture, Rural Development, Food and Drug Administration and Related Agencies Appropriation Act for Fiscal Year 2000 provided $125 million to USDA to be distributed to "dairy producers, in manner determined appropriate by the Secretary, to compensate the producers for economic losses incurred during 1999." Pub L. No. 106–78, § 805, 113 Stat. 1135 (Oct. 22, 1999) (emphasis added); *see also* 65 Final Rule, Fed.Reg.

Credit Corporation ("CCC"), an agency of the United States Department of Agriculture, issued a final rule establishing the Dairy Market Loss Assistance Program ("DMLA"), which would be responsible for distributing the financial assistance to dairy producers. See Final Rule, 64 Fed. Reg. 24,933–24,936 (May 20, 2999), codified at 7 C.F.R. §§ 1430.501–1430.511. Pursuant to the DMLA, all dairy producers who marketed milk commercially in the last quarter of 1998 would be eligible for DMLA assistance, but their payments would be limited to the first 26,000 hundredweight ("cwt") of milk produced in either 1997 or 1998. See 7 C.F.R. § 1430.506(a)(2).

Dairy Producers contends that by basing each applicant's payment on a 26,000 cwt maximum, the Secretary's regulations disproportionately favored small dairy farmers. Specifically, Dairy Producers raises two challenges to the Secretary's disbursement of the DMLA payments. First, it argues that to infer authority in the Secretary to impose an eligibility limitation on DMLA payments would violate section I of Article I of the United States Constitution, which vests legislative power in the Congress, because the statutory language did not authorize any limitations and the Secretary cannot identify an "intelligible principle" in the statutory language to assist her in determining how it might be permissible to impose them. Second, Dairy Producers argues that the regulations violate the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706, because the eligibility limitation is arbitrary and capricious. See id. § 706(2)(A) (authorizing a reviewing court to set aside

agency action that is arbitrary and capricious). We agree with the district court that § 1111 of the Agriculture Appropriations Act does not violate the Non Delegation Clause and that the Secretary's regulations imposing the 26,000 cwt maximum are not arbitrary and capricious.

## II. DISCUSSION

### A. Non–Delegation Doctrine

#### 1. Standard of Review

We review the Department's implementation of the DMLA program de novo, but our review is constrained significantly by the APA. "The Secretary's judgment that a particular regulation fits within [a] statutory constraint must be given considerable weight." *Ragsdale v. Wolverine World Wide, Inc.*, —— U.S. ——, ——, 122 S.Ct. 1155, 1160, 152 L.Ed.2d 167 (2002). Under the APA, we can set aside agency action only if it fails to meet statutory, procedural or constitutional requirements or if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Sac & Fox Nation v. Norton*, 240 F.3d 1250, 1260 (10th Cir.2001) (citing 5 U.S.C. § 706(2)(A)-(D)), *cert. denied,* —— U.S. ——, 122 S.Ct. 807, 151 L.Ed.2d 693 (2002).

#### 2. DMLA regulations

■ Section 1 of Article I of the United States Constitution provides that "[a]ll legislative powers herein shall be vested in a Congress of the United States." U.S. Const. art. I, § 1, cl. 1. The non-delegation doctrine is based on the separation of

---

7942, 7945 (Feb. 16, 2000). In February 2000, the USDA issued new rules applying the allocation formula adopted in the original DMLA Program to the newly appropriated funds, *see* Final Rule, 65 Fed.Reg. at 7944–7945, codified at 7 C.F.R. §§ 1430, et seq., as

amended, except that "supplemental payments will be made to dairy operations that received payments under [the previous DMLA program] on up to 39,000 cwt. of eligible production. *See* 66 Fed.Reg. 15172 (March 15, 2001).

powers and provides "that Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States,* 488 U.S. 361, 372, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). "Congress may, however, seek the assistance of other branches of government provided that Congress legislates an intelligible principle to guide the performance of the delegated duty." *Khan v. Hart,* 943 F.2d 1261, 1262 n. 3 (10th Cir.1991) (citing *Mistretta* ).

Acknowledging that the DMLA statutes themselves may not violate the non-delegation doctrine, Dairy Producers nevertheless insists that the Secretary's DMLA regulations are unconstitutional because "[t]here is no discerning intelligible principle" to assist the Secretary in determining whether to impose limits on how much assistance each dairy producer should receive, or what those limits should be. Aplt's Br. at 43. We agree with the district court that this argument "is not well-founded." Aplt's App. at 53 (Dist. Ct. Memorandum Opinion and Order, filed Feb. 27, 2001).

As the district court noted, under the intelligible principle test:

> the Supreme Court has 'deemed it constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.' *Mistretta v. United States,* 488 U.S. 361, 372–73, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). With the DMLA, Congress clearly delineated its general policy: to provide partial compensation to dairy farmers who suffered market loss in 1998. Agriculture Appropriations Act, § 1111(a), (d). Congress also made clear that the Department of Agriculture ... had the authority to implement to DMLA. *Id.* §§ 1111(d), 1131, 1133. Finally, Congress set boundaries on the delegated authority by limiting the total

amount that could be disbursed ($200 million), declaring that payments made under the DMLA could not affect decision regarding rulemaking activities under a separate program, and directing payments to be made 'as soon as practicable' after the program's enactment. *Id.* at 53–54.

We hold that the degree of discretion invested in the Secretary "fits comfortably within the scope of discretion permitted by [Supreme Court] precedent." *Whitman v. American Trucking Ass'ns Inc.,* 531 U.S. 457, 476, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). *See Mistretta,* 488 U.S. at 417, 109 S.Ct. 647 ("[A] certain degree of discretion, and thus of lawmaking, inheres in most executive or judicial action.") (Scalia, J., dissenting); *id.,* at 378–79, 109 S.Ct. 647 (majority opinion). Dairy Producers is not entitled to relief under the non-delegation doctrine.

### B. Alleged violation of the APA

■ Dairy Producers also contends that the Secretary failed to consider the relevant data at her disposal and in fact relied upon factors that Congress had not intended her to consider when selecting to 26,000 cwt limitation. Because Congress has satisfied the intelligible principle test and directed the Secretary to exercise her discretion, we review her judgments only to determine whether she acted arbitrarily, or capriciously, or in a manner contrary to the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made. *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574 (10th Cir.1994).

"In reviewing the agency's explanation, the reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." *Id.*

In enacting the DMLA, Congress urged the Secretary "to coordinate activities ... that promote the needs of small farm operators and that may help reverse the unwarranted decline in small farm operations." Apt's App. at 61 (district ct's Memorandum Opinion and Order, filed Feb. 27, 2001) (quoting H.R. Conf. Rep't 105–825, at 1991, (1998)). As above, we agree with the district court's conclusions that the Secretary examined the following factors: (1) the developments in dairy markets, (2) the adverse effect of declining milk prices on small farms, (3) the public value of small farms, and (4) five separate proposals for the disbursement of the $200 million. After conducting a cost-benefit analysis of various options, the Secretary chose an option that "staked out a middle ground" among the proposals. *Id.* at 62. We agree that the Secretary's decision to implement the 26,000 cwt maximum "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." *Chevron*, 467 U.S. at 845, 104 S.Ct. 2778 (internal quotation marks omitted).

### III.  CONCLUSION

Following careful review of the record on appeal, the parties' briefs, and the applicable law, we agree with the district court that the decision of the Secretary should be affirmed. We therefore affirm for the reasons discussed above, and for substantially the same reasons stated in the district court's order.